## BRUNO *v.* UNITED STATES.

No. 300. Argued November 6, 1939.—Decided December 4, 1939.

---

[24] Compare *Bedford* v. *United States,* 192 U. S. 217; *Jackson* v. *United States,* 230 U. S. 1; *Sanguinetti* v. *United States,* 264 U. S. 146.

*Mr. Samuel B. Wasserman,* with whom *Mr. M. Michael Edelstein* was on the brief, for petitioner.

*Assistant Attorney General Rogge,* with whom *Solicitor General Jackson* and *Messrs. William W. Barron, George*

*F. Kneip, Fred E. Strine,* and *W. Marvin Smith* were on the brief, for the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

In affirming the conviction of Jerry Bruno, who, with eighty-seven others, was convicted of a conspiracy to violate the narcotic laws, the Circuit Court of Appeals for the Second Circuit, dealt with an important question in the administration of federal criminal justice in such a way as to lead us to grant certiorari.

Some of Bruno's co-defendants took the witness-stand. He did not. The trial court gave the following instructions to the jury regarding the attitude to be observed by them towards the accused as a witness:

"It is the privilege of a defendant to testify as a witness if, and only when, he so elects; and when he does testify his credibility is to be determined in the light of his interest, which usually is greater than that of any other witness, and is therefore a matter which may seriously affect the credence that shall be given to his testimony."

Bruno requested this additional instruction:

"The failure of any defendant to take the witness stand and testify in his own behalf, does not create any presumption against him; the jury is charged that it must not permit that fact to weigh in the slightest degree against any such defendant, nor should this fact enter into the discussions or deliberations of the jury in any manner."

The trial judge declined this request, saying "I feel that I've already covered that." The exception to this denial having been saved, the Circuit Court of Appeals found no error in the refusal, although confessing that the guidance which had been given the jury "was not the equivalent of what the defendant had requested," *Bruno* v. *United States*, 105 F. 2d 921. By this, we take it, the court below meant that the topic on which Bruno proffered an instruction had not been charged at all.

Therefore, the narrow question before us is whether in these circumstances Bruno had the indefeasible right to have the jury told in substance what he asked the judge to tell it. The issue is determined by a proper application of the Act of March 16, 1878, 20 Stat. 30, now 28 U. S. C. § 632.[1]

That Act freed the accused in a federal prosecution from his common law disability as a witness. But Congress coupled his privilege to be a witness with the right to have a failure to exercise the privilege not tell against him. The accused could "at his own request but not

---

[1] Section 632: "In the trial of all indictments, informations, complaints, and other proceedings against persons charged with the commission of crimes, offenses, and misdemeanors, in the United States courts, Territorial courts, and courts martial, and courts of inquiry, in any State or Territory, including the District of Columbia, the person so charged shall, at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any

otherwise be a competent witness. And his failure to make such a request shall not create any presumption against him." Such was the command of the law-makers. The only way Congress could provide that abstention from testifying should not tell against an accused was by an implied direction to judges to exercise their traditional duty in guiding the jury by indicating the considerations relevant to the latter's verdict on the facts. *Sparf* v. *United States,* 156 U. S. 51. By legislating against the creation of any "presumption" from a failure to testify, Congress could not have meant to legislate against the psychological operation of the jury's mind. It laid down canons of judicial administration for the trial judge to the extent that his instructions to the jury, certainly when appropriately invoked, might affect the behavior of jurors. Concededly the charge requested by Bruno was correct. The Act of March 16, 1878, gave him the right to invoke it.

A subsidiary question remains for determination. It derives from the Act of February 26, 1919, 40 Stat. 1181, 28 U. S. C. § 391,[2] whereby appellate courts are under duty in criminal as well as in civil cases to disregard "technical errors, defects, or exceptions which do not affect the substantial rights of the parties." Is the disregard of the right which Congress gave to Bruno an error, the commission of which we may disregard? We hold not. It would be idle to predetermine the scope of such a remedial provision as § 391 by anticipating the myriad varieties of rulings made in trials and attempting an

---

[2] Section 391: "All United States courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

abstract, inclusive definition of "technical errors." Suffice it to indicate, what every student of the history behind the Act of February 26, 1919, knows, that that Act was intended to prevent matters concerned with the mere etiquette of trials and with the formalities and minutiae of procedure from touching the merits of a verdict. Of a very different order of importance is the right of an accused to insist on a privilege which Congress has given him.

To the suggestion that it benefits a defendant who fails to take the stand not to have the attention of the jury directed to that fact, it suffices to say that, however difficult it may be to exercise enlightened self-interest, the accused should be allowed to make his own choice when an Act of Congress authorizes him to choose. And when it is urged that it is a psychological impossibility not to have a presumption arise in the minds of jurors against an accused who fails to testify, the short answer is that Congress legislated on a contrary assumption and not without support in experience. It was for Congress to decide whether what it deemed legally significant was psychologically futile. Certainly, despite the vast accumulation of psychological data, we have not yet attained that certitude about the human mind which would justify us in disregarding the will of Congress by a dogmatic assumption that jurors, if properly admonished, neither could nor would heed the instructions of the trial court that the failure of an accused to be a witness in his own cause "shall not create any presumption against him."

We conclude that the substance of the denied request should have been granted, and the judgment therefore is

*Reversed.*

Mr. Justice McReynolds concurs in the result.