## UNITED STATES v. WARD.

### No. 9820.

United States Court of Appeals
Third Circuit.

Argued Dec. 6, 1948.

Decided June 14, 1949.

As Amended June 17, 1949.

O'CONNELL, Circuit Judge, dissenting.

John M. Smith, Jr., Philadelphia, Pa., for appellant.

Edward A. Kallick, Asst. U. S. Atty., Philadelphia, Pa. (Gerald A. Gleeson, United States Attorney, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and O'CONNELL, Circuit Judges.

BIGGS, Chief Judge.

The appeal at bar grows out of the conviction of Ward, the appellant at this number, and Frank Peskin on an indictment charging them with violations of the Selective Training and Service Act of 1940, 50 U.S.C.A.War, Appendix, § 311, and § 626.1 (b) of the Regulations made pursuant to the Act.[1] In United States v. Peskin, 3 Cir., 173 F.2d 97, we affirmed Peskin's conviction. The principal question raised by Ward, the appellant at bar, which we discuss at some length, grows out of the decision of the Supreme Court in Mogall v. United States, 333 U.S. 424, 68 S.Ct. 487, 92 L.Ed. 783, which was handed down several weeks after the jury in the instant case had found Ward guilty.

The second and fourth counts of the indictment were directed against Ward. Count 2 charged that Ward, intending to aid and abet Peskin in evading service in the armed forces of the United States, falsely represented in writing to Peskin's

[1] The pertinent part of Section 626.1, 6 F.R. 6844, was as follows:

"(b) Each classified registrant, shall, within 10 days after it occurs, and any other person should, within 10 days after knowledge thereof, report to the local board in writing any fact that might result in such registrant being placed in a different classification."

§§ 626.1 to 626.14 inclusive, issued under the authority contained in 54 Stat. 885, 50 U.S.C.A. Appendix §§ 301–318, inclusive; Executive Order Sept. 23, 1940, No. 8545, 5 F.R. 3779.

The pertinent portion of the regulation has since been amended.

draft board that the latter was employed as a timekeeper-checker by the Marine Welding Company (Marine), of which Ward was an officer.[2] Count 4 charged that for several months thereafter Ward failed to notify Peskin's board of change in the latter's status which might have caused the board to reclassify Peskin.[3] The jury found Ward guilty on both counts.

Thereafter, in the Mogall case, the United States conceded, and the Supreme Court confirmed, that Section 626.1(b) of the regulations, as it was then framed, imposed no legal duty on an employer to report to his employee's draft board facts which might lead the board to change the classification of the employee. On the basis of the Mogall decision the court below granted a motion in arrest of judgment on count 4. The verdict of guilty on count 2 was permitted to stand, however, and the motion for a new trial made by Ward was denied.

Ward contends that testimony supporting count 4 concerning his failure to notify Peskin's draft board at any time subsequent to Peskin's deferment that he was not regularly employed by Marine and that Marine had ceased to do business was given such emphasis at the trial and was so inextricably woven into the evidence supporting count 2 that the jury must be presumed to have inferred from the testimony offered in support of count 4 that Ward was guilty on count 2.

We cannot accept this view. While we do not propose to analyze the evidence supporting the respective counts in detail in this opinion nonetheless we have examined the testimony very carefully and have

[2] Count 2 is as follows:

"On or about April 15, 1944, at Philadelphia, in the Eastern District of Pennsylvania, Thomas Benedict Ward, Jr., one of the defendants, did knowingly aid, abet, and assist one Frank Peskin, with aliases, a registrant of Local Draft Board No. 59, in the City and County of Philadelphia, in presenting and causing to be presented, a false and fraudulent statement in writing to the aforesaid Local Draft Board, in that he, the said Thomas Benedict Ward, Jr., stated that the registrant, Frank Peskin, with aliases was employed by the Marine Welding Company, of which he was an officer, as a timekeeper-checker, which statement he, the said defendant, knew to be false and fraudulent, in that he well knew that the registrant, Frank Peskin, with aliases, was not employed by the Marine Welding Company as alleged in the said letter of April 15, 1944, which said statement in writing was made by him with the purpose and intent to aid, assist, and abet the said Frank Peskin, with aliases, to avoid and evade service in the Armed Forces of the United States, in violation of Section 311, Title 50, United States Code."

[3] Count 4 is as follows:

"From on or about April 15, 1944, down to and including October 30, 1944, in the Eastern District of Pennsylvania, Thomas Benedict Ward, Jr., one of the above-named defendants, did knowingly fail and neglect to perform a duty required of him under the provisions of the Selective Training and Service Act of 1940, as amended, and the rules and regulations made and issued pursuant thereto, having presented and caused to be presented, on or about April 15, 1944, a letter to Local Draft Board No. 59, in the City and County of Philadelphia, for one Frank Peskin, with aliases, a registrant of said Local Draft Board, alleging that the said Frank Peskin, with aliases, was an employee of the Marine Welding Company, as a result of which, the said Frank Peskin, with aliases, obtained the classification of II-B, which deferred him from service in the Armed Forces of the United States, the said Thomas Benedict Ward, Jr., did knowingly fail and neglect in writing or otherwise, to notify Local Draft Board No. 59, in the said City and County of Philadelphia, of a change of status which might have resulted in the said Frank Peskin, with aliases, being placed in a different classification than that in which he was placed during the aforesaid period, the facts being, that the said Frank Peskin, with aliases, was not regularly employed by the Marine Welding Company as heretofore represented, and that the Marine Welding Company, ceased to do business on or about August 1, 1944, all of which the said Thomas Benedict Ward, Jr., then and there well knew, by reason of which said failure to so notify the Draft Board, the said defendant did obtain the unlawful deferment of the said Frank Peskin, with aliases, from service in the Armed Forces of the United States, in violation of Section 626.1-b made pursuant to the selective Training and Service Act of September 16, 1940, as amended."

closely scrutinized the charge of the trial court as well. We have set out in footnote 4 all the references to evidence or rulings which we deem important as possibly affecting Ward.[4]

Ward's argument in particular runs as follows as we apprehend it. He was charged in count 2 with aiding and abetting Peskin in originally obtaining an illegal deferment Ward asserts that the evidence offered under count 4 proved that he had *further* aided and abetted Peskin in avoiding service in the armed forces of the United States. Therefore, says Ward, the evidence adduced under count 4 must be presumed to have "unduly influenced" the jury's mind so that he was found guilty on count 2. Consequently, he contends that he should be granted a new trial on count 2. The answer to this argument appears clearly from the indictment, from the evidence as a whole and from the rulings and charge of the trial court.

An examination of count 2 shows, see note 2, supra, that Ward was charged with aiding and abetting Peskin avoid service in the armed forces of the United States because he Ward, wrote a letter (Exhibit G-11) to Peskin's draft board stating that Peskin was employed by Marine as a "time-keeper-checker". Such was the extent of the aiding and abetting charged against Ward in count 2. That Ward sent the letter is clear beyond any doubt and he in fact admitted having sent it. There was ample evidence from which the jury could have found that Peskin had never been employed by Marine. Count 4 on the other hand did not charge Ward with aiding and abetting Peskin. It charged Ward with what was then thought to be a *principal* offense, namely failing to inform Peskin's draft board of Peskin's change of status as, supposedly, was required by Section 626.1 (b) of the regulations.

An examination of the record as a whole demonstrates how clearly the demarcation between the offenses set up in counts 2 and

4 of the indictment was followed throughout the trial. Moreover, the charge of the court was exceedingly clear as to the gravamen of counts 2 and 4. The trial judge stated expressly to the jury, p. 433 of the transcript, "I direct you to consider each count separately and return a separate verdict on each count of the indictment." He described the offenses set out respectively in counts 2 and 4 of the indictment clearly and succinctly and analyzed the evidence applicable to each of the two counts. The charge was complete and fair. We cannot see how Ward sustained the slightest prejudice.

To strike down the conviction on count 2 because evidence was received during the course of the trial on count 4, under the circumstances of the instant case, would seem to us to require a like reversal in any case in which there was a multiple count indictment and evidence was received during the course of a trial on any count which either was not sent to the jury or was quashed for some reason. Indeed, in the instant case Ward might argue with equal force or lack of it that because Peskin was found guilty evidence showing Peskin's guilt was attributable to him, Ward. Peskin could have made a similar argument reversing the premises. It is obvious that such propositions are without merit.

The other points raised by Ward do not require discussion.

The judgment of conviction will be affirmed.

O'CONNELL, Circuit Judge (dissenting).

I agree with the majority of this court that the counts of an indictment are separate and distinct, and that the district judge properly so informed the jury. I cannot, however, dispose of the instant appeal on that basis.

As the majority noted, there was a particularly close interrelationship between the counts with which Ward was confronted.

---

[4] See the following pages of the transcript:
37, 39, 42, 46, 52, 57, 60, 63, 67–8, 71–4, 76, 92–3, 107–110, 121–3, 181, 187, 203, 209, 219, 252, 254, 264, 272–3, 280–3, 287, 290, 294, 298, 306, 337, 347–9, 352, 384–390, 431, 433, 439, 442, 446–8.·
See particularly the testimony of Ward himself, pp. 303–367, 373–384, and the charge of the court, pp. 430–457.

Lacking direct evidence that Ward knowingly sought and obtained an illegal deferment for Peskin, the Government assuredly could and did present to the jury the pattern of Ward's behavior at the time and subsequent thereto as circumstantial evidence of his state of mind. At the trial of the instant case, however, the Government went much further. Through the testimony of at least six witnesses, one of whom was Ward himself, the Government established that neither Ward nor the Marine Welding Company, at any time after the deferment was granted, communicated with Peskin's draft board. When this is coupled with the charge to the jury that, "under the regulations that were promulgated pursuant to this law, it was the duty of every classified registrant within ten days after the occurrence, *and any other person within ten days after knowledge thereof* to report to the local board in writing any fact that might result in such registrant being placed in a different classification," [1] it seems to me apparent that the jury had a weighty basis for inferring that, by failing to perform a legal duty, Ward betrayed the presumably evil design behind the letter which he sent to Peskin's draft board. This is not a case in which the proof of the Government stopped at the point of showing conduct inconsistent with innocence. It affirmatively indicated that Ward had committed a second offense in an effort to camouflage his initial misdeed. Neither the prosecution nor the court below, of course, intended to take advantage of Ward, as both court and counsel then labored under the misapprehension that such legal duty did exist; but I believe nevertheless the fact remains that Ward, able to explain his failure to notify the board only on the ground of ignorance of the regulation, was placed in an unfair and prejudicial position.

With reference to Ward's defense that "I never—all my experience with the company, I have never received any notice from the draft board stating that any notification should be sent to them, and the first that I ever knew about it was very small printing on a form or something that you showed one time.[2] That is the only time I knew about it, and what I read in the indictment," it is important to note that the record in the court below did not refute his assertion. The court charged the jury that, according to his recollection, the "form 59" mailed to the Marine Welding Company "said that it was their duty to report to the board and give the board notice of any change of status"; but examination of the form 59 reveals that there was no such notation. Another form, 42-A, which did so inform employers, was never sent to the Marine Welding Company in connection with Peskin. On rebuttal the Government adduced no testimony that a form 42-A had ever been filed by the Marine Welding Company on any other employee, or that the Marine Welding Company had ever notified any draft board of a fact which might have resulted in a change of the draft classification of any of its other employees. Consequently, the uncontroverted assertion by Ward that he was ignorant of the regulation, an averment with evidential support, might well have been nonetheless deprived of its probative force; for the jury, informed that such a legal duty did exist, and from that fallacious foundation being warranted in reasoning that Ward must have been aware of the obligation,[3] would have been justified in attaching negligible credibility to Ward's testimony in this regard. Whether or not Ward knew of the regulation could have been relevant only as to the aiding-and-abetting count, since ignorance of the law would not have excused performance of the duty, had the regulation imposed one. A jury at a new trial, on the other hand, freed of the errors in approach induced by the fourth count, could justly determine whether Ward's failure to

---

[1] Emphasis supplied.

[2] Ward was probably referring to the Form 57 of the draft board, which form was sent to the employee but not to the employer.

[3] The jury would have so concluded not only because the trial judge incorrectly stated that such a notation was sent the Marine Welding Company with reference to Peskin, but also because it was likely that an employer of a sizable number of men doubtless became acquainted with that alleged responsibility in the regular course of its business.

notify the Board tended to prove his guilt of the aiding-and-abetting charge; or was attributable to lack of information.[4]

The majority opinion likens the issue under consideration to a general situation where one of the multiple counts of an indictment is not sent to the jury or is quashed. As I see the problem, however, the issue is much deeper. Ward stood trial on a charge which in fact was not criminal, but which was treated as criminal by the court and so considered by the jury. The elements making up that supposed offense were also used as items of proof of another charge which did cover a criminal act. This jury, in my opinion, never had the opportunity to see and weigh the evidence in proper perspective.

In Kotteakos v. United States, 1946, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, the Supreme Court said: "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, supra, [308 U.S. 287 at page 294, 60 S.Ct. 198 at page 200, 84 L.Ed. 257]. *But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.* The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. *It is rather, even so, whether the error itself had substantial influence.* If so, or if one is left in grave doubt, the conviction cannot stand." (Emphasis supplied). Because I cannot dispel the substantial doubt that the jury unfortunately may have inferred from the apparent and defenseless guilt of Ward on the fourth count that his failure to notify the board was the element which established his guilt on the second count as well, I believe that the unusual circumstances of this case compel the ordering of a new trial wherein all doubts as to due process are eliminated.

Accordingly, I would reverse the judgment of the district court and order the granting of a new trial.

---

[4] It is probably unnecessary to add that the Government would not have to prove that Ward knew of the regulation to convict of aiding-and-abetting. Obviously, Ward could have been guilty of the offense, and yet unaware of the regulation.