**UNITED STATES of America,
Appellee,**

v.

**Salvadore Escabi PADILLA, Appellant.**

**No. 339, Docket 27664.**

United States Court of Appeals
Second Circuit.

Argued Feb. 23, 1967.

Decided March 20, 1967.

Phylis Skloot Bamberger, Bernard P. Becker and Anthony F. Marra, New York City, for defendant-appellant.

Michael W. Leisure, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Douglas S. Liebhafsky, Asst. U. S. Atty., of counsel), for appellee.

Before FRIENDLY, ANDERSON and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge.

Salvadore Escabi Padilla, shown by an abundance of evidence to have engaged in large-scale importation of narcotics from Mexico, complains he was convicted of the wrong crime in the wrong place. We hold the evidence warranted his conviction of the offense charged, in the district where he was tried.

The single count indictment in the District Court for the Southern District of New York charged Padilla with conspiracy with Jorge Asaf Bala and other persons unknown to the grand jury to import narcotic drugs in violation of 21 U.S.C. §§ 173–174. It laid four overt acts, one of them later withdrawn from the jury, as having occurred in the Southern District of New York in October and November 1959; the three remaining were Padilla's meeting in Manhattan with an undercover agent, Reynaldo Maduro, Padilla's departure from Manhattan for Mexico, and his sending a telegram from Mexico City to Manhattan.

The Government's case was presented primarily through Maduro and James Attie, another undercover agent who assisted Maduro in Mexico City. Maduro had obtained an introduction to Padilla in New York. At their meeting the latter boasted of his frequent journeys bringing narcotics from Mexico into the United States in specially constructed suitcases. The immediate object of Padilla's sales talk was cocaine to be furnished by a Mexican supplier, Luis Botono Seijo. At a second meeting, later that day, Padilla agreed to sell Maduro three pounds of cocaine for $14,000, delivery to be in New Orleans. Padilla then left an address in Mexico City where Maduro could reach him. About two weeks later Maduro telegraphed Padilla in Mexico City that he was coming to Mexico. Padilla, in reply, expressed pleasure that Maduro was coming.

When Maduro arrived there, neither Seijo nor cocaine was on hand. Padilla wanted Maduro to await arrival of a shipment from Peru but Maduro declined. Swiftly changing the subject matter of the intended deal, Padilla extolled the profitability of heroin and assured Maduro of his ability to procure it. The prospective seller was Bala, who was of Arabic extraction; agent Attie, who enters the stage at this point, spoke Arabic and his knowledge proved valuable. In a conversation between the two men, attended by Padilla and Maduro but presumably not understood by them, Bala expressed pleasure at being able to deal with a fellow countryman, agent Attie having posed as the principal; Bala explained that Padilla was his courier or, less flatteringly, his "dog," with Maduro being assigned a corresponding role vis-a-vis Attie. After a contretemps involving some gunplay, Bala made the sale and Padilla sought his commission; each was then arrested by the Mexican judicial police with whom the agents had been working.

The Legal Aid Society, representing Padilla on appeal, makes an earnest argument which it asks us to consider under the "plain error" rule, F.R.Crim.P. 52(b), although it was not advanced below: The utmost in the way of an unlawful agreement antedating Padilla's New York trip, which was shown by the evidence, was one between him and Seijo. Such evidence would not support a conviction since no such agreement was charged in the indictment, Seijo presumably not being a person unknown to the Grand Jurors. Moreover, even if the indictment could be read to include a conspiracy with Seijo the proof with respect to Bala was erroneously admitted since there is no evidence that Bala entered into it, the proof being indicative of a spoke con-

**998**

spiracy as in Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), rather than a chain as in United States v. Bruno, 105 F.2d 921, 922–23 (2 Cir.), rev'd on another ground, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939). The admission of such evidence of a separate conspiracy cannot be disregarded as an immaterial variance. A separate conspiracy formed in Mexico City between Padilla and Bala after Maduro's arrival could not be prosecuted in the Southern District of New York since it was not formed there and no overt act in pursuance of the conspiracy was committed there and 62 Stat. 826 (1948), now 18 U.S.C. § 3238 (1964), provides that the trial of all offenses committed outside the United States or its territories shall be held in the district where the accused is found or is first brought, here the Southern District of Texas.

▮ Ingenious as this argument may be, it shatters on two rocks: First, that the judge submitted the case to the jury on the basis that in order to convict they must find a single conspiracy between Padilla and Bala and an overt act pursuant thereto in the Southern District of New York and, second, that the evidence permitted their so finding, although perhaps only by a hair's breadth. The speed with which Padilla proffered Bala as a supplier once the cocaine deal fell through, and his subsequent success, afforded some warrant for an inference that they had a long-standing arrangement. This inference was powerfully reinforced by Bala's remarks to agent Attie. If these are regarded as "verbal acts," i. e., encouragements to Attie to rely on Padilla, as we think they should be, they were admissible even without other evidence of conspiracy, see United States v. Nuccio, 373 F.2d 168 (2 Cir. 1967). But even if they were to be viewed as hearsay, the permissible inference from Padilla's expeditious offer and production of Bala was enough to warrant the judge in allowing the jury to consider Bala's statements, although it might not have sufficed for a conviction

if the statements were not also thrown on the scale. With the jury thus entitled to find an agreement between Bala and Padilla antedating the New York trip, Padilla's overtures in New York could be regarded as on behalf of Bala and other narcotic suppliers if the Seijo deal fell though even though Seijo was expected at the time to be the beneficiary

Affirmed.