BREYER, Circuit Judge.
The federal government charged Kenneth Glenn and Manuel Benevides with four drug crimes, and a jury convicted them. For present purposes, we can group the charges into two basic offenses: (1) conspiring to import and to possess “marijuana and hashish” and (2) actually importing and possessing marijuana. See 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 846, 952, 960(a)(1), 963. Glenn and Benevides appeal their convictions, basically claiming that the government failed to prove that they were part of the grand marijuana and hashish smuggling scheme that the indictment described. They argue that the evidence introduced at trial showed that, as to them, the charged conspiracy was in fact two separate conspiracies, one dealing with marijuana from Thailand and the other dealing with hashish from Pakistan. Glenn says that he had nothing to do with smuggling marijuana, and Benevides says he had nothing to do with smuggling hashish. After reviewing the record, we have found that they are right. In Glenn’s case, the variance between indictment and proof requires reversal, but in Benevides’ case, it does not.
I.
We approach this classical “single/multiple” conspiracy problem with several well-established points in mind. First, we recognize that conspiracy law, like most criminal law, focuses upon the activities of an individual defendant. It is therefore dangerous to think of a conspiracy as a kind of “club” that one joins or a “business” in which one works. See Developments in the Law — Criminal Conspiracy, 72 Harv.L.Rev. 922, 934 (1959) (criticizing courts' that deal with conspiracy “as though it were a group”). Those metaphors falsely suggest that the “member” or “employee” automatically becomes legally responsible for the entire enterprise. Instead, “the gist of the [conspiracy] offense remains the agreement, and it is therefore essential to determine what kind of agreement or understanding existed as to each defendant.” United States v. Borelli, 336 F.2d 376, 384 (2d Cir.1964) (emphasis added).
We also recognize that an agreement or understanding may be tacit. A defendant drug distributor may expressly agree with his immediate supplier that he will sell any drugs provided to him, but he may tacitly agree with a more distant supplier, say a smuggler, that each will work for the success of the whole drug operation. A jury may find a tacit agreement at least when the distributor knows that the smuggler probably exists, that distributing drugs tends to help the smuggler, and that the smuggler’s contribution to the success of the entire enterprise is likely needed if the distributor is to achieve his own more immediate objective. See United States v. Bruno, 105 F.2d 921 (2d Cir.), rev’d on other grounds, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939). The known interdependence of the linked activities in such a *858 case makes it reasonable to speak of a tacit understanding between the distributor and others upon whose unlawful acts the distributor knows his own success likely depends. Cf. Blumenthal v. United States, 332 U.S. 539, 558, 68 S.Ct. 248, 257, 92 L.Ed. 154 (1947) (finding that whiskey salesmen conspired with the original, but unknown, owner of the whiskey when they knew themselves to be aiding “a single over-all comprehensive plan”). When such interdependence is missing, when the distributor is indifferent to the purposes of others in the enterprise — say, other distributors — the tacit understanding does not exist. See Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); Borelli, 336 F.2d at 383 n. 2.
Further, the government can prove the existence of both express and tacit agreements by pointing to the actions as well as the words of the defendants. See Borelli, 336 F.2d at 384; 2 Model Penal Code & Commentaries Part 1, § 5.03, comment 3(a) (1985) and cases cited therein. But it can prove only the agreement or understanding that the evidence of word or deed implies beyond a reasonable doubt. See United States v. Drougas, 748 F.2d 8, 15, 17 (1st Cir.1984).
Finally, we are aware that a defendant cannot upset a conviction by showing that the government proved understandings or agreements different from those charged unless the “variance” between the evidence and the charges prejudiced the defendant, unless it “ ‘affect[ed] the substantial rights’ of the accused.” Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). As long as administrative convenience leads the government to prosecute many, or all, members of a large criminal enterprise at a single trial, variances between the scope of the conspiracy charged and that proved may, at least as to some defendants, be fairly common. The risks of prejudice in such trials are serious and warrant reversal when they materialize; but when substantial rights are not affected, the error is “harmless.” 28 U.S.C. § 2111; see Kotteakos, 328 U.S. at 758-60, 66 S.Ct. at 1244-45 (discussing the origin and purpose of the harmless error statute); Berger, 295 U.S. at 82, 55 S.Ct. at 630.
These principles of law suggest that an appellate court, reviewing the type of alleged variance here at issue, should ask the following questions. (1) Is the evidence sufficient to permit a jury to find the (express or tacit) agreement that the indictment charges? (2) If not, is it sufficient to permit a jury, under a proper set of instructions, to convict the defendant of a related, similar conspiracy? (3) If so, does the variance affect the defendant’s substantial rights or does the difference between the charged conspiracy and the conspiracy proved amount to “harmless error?”
A.
The answers to these questions require us to reverse Glenn’s convictions. First, we do not see how a jury could convict Glenn of the conspiracy that the indictment charged, namely, the conspiracy to import and possess both marijuana from Thailand and hashish from Pakistan. The evidence shows several core conspirators who met repeatedly in New York City in the fall of 1980 and in the summer and fall of 1981; who developed plans to smuggle marijuana from Thailand and hashish from Pakistan; who fraudulently borrowed $10 million from the First National Bank of Chicago to finance their plans; who bought a boat called the Adeline C, which they originally planned to use for smuggling Pakistani hashish but which they actually used for importing the Thai marijuana; who bought a landing area in Rhode Island in 1981; and who unloaded eight tons of marijuana smuggled from Thailand in that area. The evidence also shows, however, that both Glenn and the other conspirators considered Glenn to be a subsidiary figure, that Glenn’s duties involved only the smuggling of hashish, and that, for the most part, Glenn attended meetings where the subject of discussion was Pakistani hashish, not Thai marijuana. The record does not show how the hashish venture could have helped the marijuana venture, or vice versa.
*859 The government, in arguing that Glenn belonged to a single, unified conspiracy to smuggle both marijuana and hashish, points only to the following five facts: (1) three “core” conspirators (Bryon, Murray and Warden) fraudulently borrowed ten million dollars from the First National Bank to finance the smuggling of marijuana and hashish, (2) two other core conspirators (Cooper and Lynn) planned to distribute both marijuana and hashish, (3) Bryon testified that Warden bought property in Rhode Island as a site for unloading both marijuana and hashish, (4) Bryon changed the destination of the Adeline C from Pakistan to Thailand, and Glenn became upset when he found out, and (5) Glenn attended one meeting where the core conspirators discussed the smuggling of both marijuana and hashish, and was present at one or two other meetings where they discussed marijuana only. The first three of these facts may show the existence of a conspiracy to smuggle both marijuana and hashish among the core group; they may show that the core conspirators had that dual objective. But they do not show that Glenn had that dual objective or that Glenn intended to, or did, take actions that likely would help the marijuana venture. The fourth fact shows that Glenn actively opposed the core group’s plans for marijuana smuggling, not that he tried to help them. And the fifth fact shows at most that Glenn knew about the marijuana venture; it does not show that he agreed to take, intended to take or actually took any action that he knew would likely further that smuggling. In sum, the record reveals evidence of Glenn’s participation only in the smuggling of Pakistani hashish. The record does not reveal how the hashish venture could have helped the marijuana venture, or vice versa; nor does it indicate that Glenn thought the two ventures interdependent, in the sense that the success of the one might have facilitated completion of the other. The evidence is therefore insufficient to show that Glenn expressly or tacitly agreed to do more than to import and possess Pakistani hashish. See Blumenthal, 332 U.S. at 558, 68 S.Ct. at 257 (noting that separate conspiracies may be found when defendants have distinct ends, when they have no interest in others’ unlawful activities and when they do not aid others in conducting those activities); United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir.1980) (“[MJere association with members of a conspiracy, the existence of an opportunity to join a conspiracy, or simple knowledge, approval of, or acquiescence in the object or purpose of the conspiracy ... is not sufficient to make one a conspirator.”); United States v. Collins, 552 F.2d 243, 245 (8th Cir.) (“Knowledge of the existence of or acquiescence in a conspiracy does not serve to render one a part of the conspiracy.”), cert. denied, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); United States v. Tramunti, 513 F.2d 1087, 1106 (2d Cir.) (indicating that when the evidence shows competition rather than “mutual dependence and assistance,” the court should find separate conspiracies), cert. denied, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).
Second, though there is insufficient evidence to permit a jury to convict Glenn of the conspiracy charged in the indictment— the conspiracy to import and possess both hashish and marijuana — there is more than enough evidence to convict Glenn of a related, simpler conspiracy. The evidence shows that Glenn attended and participated actively in meetings that involved Pakistani hashish, and that he engaged extensively in other activities — traveling to Pakistan, arranging to store, inspect and transport hashish — related to the Pakistani hashish. A properly instructed jury could have convicted Glenn of conspiring to import and possess hashish. Cf. United States v. Bertolotti, 529 F.2d 149, 155 (2d Cir.1975) (finding “sufficient basis for the jury to be satisfied beyond a reasonable doubt that each of the asserted transactions took place, but no evidence linking them together in a single overall conspiracy”).
Third, the variance between the single conspiracy charged and the conspiracy that the evidence proved significantly prejudiced Glenn. The judge instructed the jury that even though there was no evidence that Glenn himself imported or physically *860 possessed any marijuana, the jury could convict him on the substantive charges if they found him guilty of the charged conspiracy. See Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (holding that a party to a continuing conspiracy could be found guilty of substantive offenses committed by a co-conspirator in furtherance of the conspiracy). The jury then convicted Glenn of actually importing and possessing in excess of one thousand pounds of marijuana. Glenn was sentenced to eight years in prison on the possession charge — three years more than the statutory maximum punishment for conspiring to import the hashish alone. See 21 U.S.C. § 841(b)(1)(A). As we have pointed out, however, the evidence is insufficient to connect Glenn with the charged conspiracy. Thus, Glenn’s convictions on the substantive charges and his sentence depended upon an improper jury instruction — an instruction that would not have been given if Glenn had been indicted properly. Moreover, the only evidence tying Glenn to Rhode Island is a single statement by Bryon that the core group would use its Rhode Island property for unloading both marijuana and hashish. Since the core group was involved in other hashish operations not involving Glenn, we do not see how the jury could have taken that statement — in context and without impermissible speculation — as showing that the offload plans constituted overt acts in Glenn's conspiracy. Under a proper indictment, the government could not have established venue in Rhode Island for Glenn’s trial. See United States v. Durades, 607 F.2d 818 (9th Cir.1979) (finding prejudice when a variance allowed the government to try a defendant in an improper forum); Note, Federal Treatment of Multiple Conspiracies, 57 Colum.L.Rev. 387, 397 (1957) (“[T]he ‘substantial rights’ of a defendant have been affected if he has been tried in a forum in which ‘his’ conspiracy did not take place____”). We therefore reverse Glenn’s convictions.
B.
We turn next to Benevides. First, in our view, there is almost no evidence that Benevides conspired to import both marijuana and hashish. The record does not reveal any relevant contact between Benevides and the other conspirators until mid-1981, some months after the initial planning meetings. It shows that Benevides helped the core members find an offload site for the marijuana, that he helped to find offloaders for the marijuana, that he assisted with renovations to a quonset hut used to store the marijuana, that he picked up a truck used to transport marijuana, and that he helped move some conveyor belts intended to be used in offloading. The only evidence tying him to Pakistani hashish consists of (1) his attendance at a meeting at which Warden and Bryon discussed both smuggling ventures and got into an argument, and where Benevides’ only reported words were: “Let’s let everybody part as friends,” and (2) later testimony by Bryon that the Rhode Island property was purchased “as a base to unload marijuana and hashish from.” The first item of evidence shows neither an express nor a tacit agreement to help smuggle Pakistani hashish; it shows neither that Benevides intended to assist in importing hashish nor that he thought there was any interdependence between his actual or intended acts in furtherance of the marijuana smuggling and the effort by others to import hashish. The second item might show assistance if one could reasonably infer from Bryon’s comment that someone told Benevides that the Rhode Island property would be used to offload Pakistani hashish. But since the major conspirators had planned to import hashish from other places as well, and since there is no evidence that Benevides was informed that the property would be used for any hashish, concluding that Benevides was linked to the hashish venture on the basis of the second item alone would require impermissible speculation on the jury’s part. Thus, the evidence fails to show beyond a reasonable doubt that Benevides conspired, as the indictment charges, to import and possess marijuana from Thailand and hashish from Pakistan.
*861 Second, the evidence is more than sufficient to permit the jury to convict Benevides, under proper instructions, of conspiring to import and possess marijuana from Thailand. Benevides does not seriously dispute this point.
Third, the variance between the conspiracies charged and the conspiracies proved did not prejudice Benevides substantially. We have found no testimony or other evidence relating to the hashish conspiracy that could have affected the jury’s judgment regarding Benevides’ guilt on the marijuana charges. There is therefore no possibility of “spillover” here. The substantive charges of actual importation and possession related directly to the marijuana conspiracies of which Benevides could properly have been convicted. Had Benevides been charged properly, the Pinkerton charge would have enabled the jury lawfully to convict Benevides of the substantive offenses charged. Venue was proper in Rhode Island with respect to all of the charges, for that is where Benevides’ own acts assisting with the marijuana smuggling took place. Finally, Benevides’ punishment was no greater than the lawful punishment for the marijuana conspiracy alone, and he does not claim that he was sentenced for anything he did not do. Thus, in our view, any variance from the indictment amounted to no more than harmless error.
II.
Benevides raises several other arguments that we shall discuss in turn.
A.
He says that the trial court erred in giving the following instructions as to “reasonable doubt:”
... the obligation that rests upon the government to prove a defendant’s guilt beyond a reasonable doubt does not and cannot mean that it must do so beyond all doubt____ A reasonable doubt means a doubt based upon reason. Each of you know from your own experiences in human affairs and intercourse what a doubt is, just as you know anything is reasonable or unreasonable. Therefore, a reasonable doubt is a doubt which is based upon some sound reason or for which in your mind some sound reason can be assigned. It is not a doubt based upon mere whim or caprice or solely upon the ingenuity of counsel. It must be a doubt rooted in the evidence. If after weighing and considering all of the evidence you have a doubt based upon reason as to any element of a crime charged, then it is your duty to acquit the particular defendant whose guilt you are considering. On the other hand, if after fair and impartial consideration of all the evidence you are satisfied of a defendant’s guilt beyond a reasonable doubt, you should vote to convict. Lest there be any doubt as to what I have said, let me make it clear that a reasonable doubt may arise not only from the evidence produced in the case but may likewise arise from a lack of evidence.
At trial, Benevides objected to the words: “a reasonable doubt ... is not a doubt based ... solely upon the ingenuity of counsel.” See Fed.R.Crim.P. 30. If these words stood alone, they could conceivably misdirect the jury’s attention away from the logical force of the doubt and toward its source, leading it to discount reasonable doubts created by defense counsel. This phrase, however, “ ‘may not be judged in artificial isolation, but must be viewed in the context of the overall charge.’ ” United States v. DeVincent, 632 F.2d 147, 152 (1st Cir.1980) (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). In light of the numerous other correct instructions about the presumption of innocence and the government’s burden of proof, we do not think the jury could have been misled.
B.
Benevides also argues that the trial court failed adequately to tell the jury to focus on each individual’s agreement or understanding and, to be more specific, to avoid treating the conspiracy as a disembodied entity that each defendant either did or did not “join.” More specifically, he *862 says that the court’s instruction on multiple conspiracies was erroneous because the judge omitted the following two paragraphs that counsel (before the jury was instructed) had asked the judge to include:
If you find that the conspiracy charged in the Indictment existed between any of the defendants, you must then decide as to each defendant, on an individual basis, whether he joined the conspiracy with knowledge of its unlawful purpose.
In that connection, each defendant is entitled to individual consideration of the proof respecting him, including, but not limited to, any evidence of his knowledge of the scheme, his status in the group, the level of his participation in activities and key conversations, and his participation in the design of the unlawful plan or scheme.
We find no reversible error. First, the objection that counsel made at the time the judge finished instructing the jury was the following:
I assume the record can reflect that we had a charge conference, it was my recollection that the Court indicated to counsel that it would charge the multiple conspiracy charge more or less along the lines that I had proffered to the Court. I find the charge today not along those lines and I would specifically object to that. I would specifically request the Court to give a curative instruction to read to the jury in form or substance that as to the formation of a conspiracy, that it must be directed towards achieving a single unlawful end result. I believe that my concern is basically with the word “end” and if they find that the agreements had their own distinctive ends, then they must acquit, that they have proved that there was a multiple conspiracy.
The quoted objection, in context, did not direct the district court’s attention to the need to focus on each individual’s agreement. Rather, it stressed the need to make clear to the jury that in the defense’s view the conspiracies charged each had two different ends, and might each have consisted of two separate conspiracies. The judge carefully recharged the jury on this point, and counsel did not object thereafter. Thus, we find that Benevides did not clearly object to the matter he now raises. See Fed.R.Crim.P. 30 (“No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.”).
Second, the court repeatedly instructed the jury on the need to determine each defendant’s guilt on the basis of his statements and actions alone. Thus, we find no “plain error” in the court’s instruction. See United States v. Fusaro, 708 F.2d 17, 22 (1st Cir.), cert. denied, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983); cf. United States v. Jarabek, 726 F.2d 889, 904 (1st Cir.1984) (finding no error when, in light of the charge as a whole, the challenged instruction could have had no significant effect on the jury’s verdict); United States v. Gibson, 726 F.2d 869, 874 (1st Cir.), cert. denied, 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984) (same).
C.
Benevides argues that the evidence was insufficient to prove that the substance he helped to import was marijuana. The evidence included, however, (1) testimony by a crew member on the Adeline C that he knew that the bags loaded on the boat were filled with marijuana because he had smoked some of it, (2) testimony by a crew member on the offload vessel that he knew the boat carried marijuana because he could smell it, and he had smoked marijuana before, and (3) testimony by a coconspirator, whose job had been to inspect the marijuana in Thailand to ensure that it was of good quality, that he knew what marijuana looked like from having smoked it and having seen pictures of it. Other witnesses repeatedly referred to the substance that was offloaded in Rhode Island as “marijuana,” and they testified that they had received large sums of money for their participation in the venture. The evidence showed that the substance was unloaded *863 under cover of darkness, and that some offloaders took their pay in the form of two duffel bags of the substance. The totality of this evidence seems more than sufficient to prove beyond a reasonable doubt that the substance imported was marijuana.
D.
Again for the first time on appeal, Benevides complains that the district court failed to instruct the jury that it had to find beyond a reasonable doubt that the substance imported was marijuana. Among other instructions on this subject, however, is the following:
It is part and parcel of the government’s case on each of Counts 3 and 4 to prove to you beyond a reasonable doubt ... that the marijuana, if you find any existed, involved in those counts, was in excess of 1,000 pounds.
We believe that the district court adequately instructed the jury on this point.
III.
For the reasons explained above, we reverse Glenn’s convictions and order dismissal of the indictment against him. The judgment of the district court as to Benevides is affirmed.

So ordered.