89 F.3d 830
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald NELSON, a/k/a Ronnie, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth B. SIDBERRY, a/k/a Preacher Man, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cleveland NELSON, a/k/a Fat Daddy, a/k/a Cleve, Defendant-Appellant.
 Nos. 95-5353, 95-5450, 95-5517.
 United States Court of Appeals, Fourth Circuit.
 Argued April 5, 1996.
Decided July 2, 1996.
 
 Appeals from the United States District Court for the Eastern District of North Carolina, at Fayetteville. Malcolm J. Howard, District Judge. (CR-94-57-H).
 ARGUED: John Rainey Parker, Jr., Clinton, North Carolina, for Appellant Cleveland Nelson; Dean Robert Davis, Wilmington, North Carolina, for Appellant Sidberry; Robert Lonnie Cooper, Fayetteville, North Carolina, for Appellant Ronald Nelson. Jane H. Jolly, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Circuit Judge, PAYNE, United States District Judge for the Eastern District of Virginia, sitting by designation, and KELLAM,* Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Ronald Nelson (Ronald), Cleveland Nelson (Cleveland) and Kenneth B. Sidberry (Sidberry) appeal from their convictions and sentences for conspiracy to possess with intent to distribute cocaine and cocaine base (crack), and substantive offenses of distribution of cocaine base (crack), and for aiding and abetting each other in the distribution thereof. Finding no reversible error, we affirm.
 
 I.
 
 2
 Count One of the indictment in this case charges Ronald, Cleveland and Sidberry, along with Julio Keith (Keith), Gilmore Allen, Jr. (Allen) and Eric Moore (Moore) with a conspiracy to violate 21 U.S.C. § 841(a)(1) to possess with intent to distribute cocaine base (crack) and cocaine. Ronald, Cleveland and Sidberry were charged in various counts with distributing cocaine base (crack) and with aiding and abetting others in so doing. Cleveland was also charged in Count Nine with possessing a firearm from which the serial number had been obliterated. Each of said defendants were convicted as charged, except Cleveland was found not guilty of Count Nine. Some three other persons were charged in the indictment, but were not dealt with at this trial. Ronald, Cleveland and Sidberry assert the trial court erred in (a) failing to grant their Rule 29 Federal Rules of Criminal Procedure motion for a directed judgment of acquittal; (b) finding sufficient evidence to support the verdicts; (c) making inquiry of counsel and defendants in the presence of the jury as to whether defendants wished to testify; (d) determining the quantity of drugs attributed to Cleveland; (e) providing for a 100 to 1 ratio of powdered cocaine to cocaine base; (f) making comments in the presence of the jury; (g) finding Ronald was responsible for 698.45 grams of cocaine powder and 70.3 grams of cocaine base; (h) admitting Exhibit 122 and 122-A, a file box and cards of business records; (i) sentencing Sidberry as a career offender; (j) refusing to depart downward because of over-representation of Sidberry's criminal history; and (k) denying defendants due process and a fair trial as a result of the cumulative effect of the court's errors.
 
 II.
 
 3
 The three defendants, along with Keith, Allen and Moore, were charged with a conspiracy to possess with intent to distribute cocaine and cocaine base (crack) and with substantive offenses as above set out.
 
 
 4
 Cleveland was the leader of the drug organization. Ronald and Sidberry worked for him, as did others. Alicia Johnson testified that for about a year beginning in late 1990 and early 1991, she purchased a half an ounce of cocaine each week from Cleveland for $700 to $750 which she sold for $1,400 to $1,500. Thereafter, she started making deliveries of cocaine for Cleveland. She traveled with Cleveland and Ronald to New York to purchase cocaine on two occasions. On one of these trips, they purchased 7 ounces--198.45 grams--and on the other, they purchased 500 grams of cocaine. Some 3 days later, she observed Cleveland in his home in Newton Grove packaging 7 ounces of cocaine and 1/2 ounce of cocaine base.
 
 
 5
 On February 27, 1992, Alicia obtained 37.9 grams of cocaine from Cleveland which she sold to undercover agents. At other times she saw Cleveland cook cocaine and saw him package it in small bags. She further testified that Ronald helped her with deliveries. Gilmore Allen and Jerimiah Hemmingway testified they purchased cocaine and crack from Cleveland. Daniel Parker, an informant and an undercover agent, came to Plantation, where Cleveland's trailer was located, on several occasions to purchase cocaine from Cleveland. Other witnesses related that they participated in purchases from Cleveland, Ronald and Sidberry. Allen arranged for sales to undercover agents and received money therefrom which he gave to Sidberry. Sidberry often made deliveries in a red and white pickup truck which belonged to Cleveland. Allen also related a transaction on July 1, 1994, where the purchaser did not have sufficient funds for the purchase and Allen therefore returned a portion of the unsold cocaine to Cleveland.
 
 
 6
 Undercover agent Joseph Dawson arranged purchases of cocaine through Ronald including one ounce on June 8, 1994, another purchase on June 16, 1994, and one-half ounce on June 16, 1993. The last purchase was delivered by Sidberry driving Cleveland's red and white truck. Another purchase occurred on June 24, 1993, when the delivery was made by Cleveland in his red and white truck; another purchase transpired on July 1st, which was delivered by a man named "Gil"; again on July 19th, a delivery of cocaine was made at a bridge on Street 1918, by Sidberry from the red and white truck driven by Cleveland.
 
 III.
 
 7
 Dealing first with the defendants' contentions that the evidence was insufficient to support the verdict and whether defendants' motion for a judgment of acquittal should have been granted, the prevailing rule has long been that a district court is to submit a case to the jury "if the evidence and inference therefrom most favorable to the prosecution would warrant the jury's finding the defendant guilty beyond a reasonable doubt." (citations omitted). Burks v. United States, 437 U.S. 1 (1978). There, the Court continued, saying "a federal appellate court applies no higher a standard; rather, it must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." Id. 437 U.S. at 17. See United States v. Singh, 54 F.3d 1182, 1186 (4th Cir.1995); United States v. Williams, 41 F.3d 192, 199 (4th Cir.1994), cert. denied, 115 S.Ct. 1442 (1995). The trial court, which heard the testimony of witnesses first hand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal. Burks, 437 U.S. at 16. When sufficiency of the evidence is challenged on appeal, the evidence, and all reasonable inferences fairly drawn therefrom, must be viewed in the light most favorable to the prosecution. Tuggle v. Thompson, 57 F.3d 1356, 1370 (4th Cir.1995).
 
 
 8
 Defendants were charged with a conspiracy under 21 U.S.C. § 846. That statute provides that any person who "attempts or conspires to commit any offense" defined in that subchapter I of the Drug Abuse Prevention and Control Act shall be subject to the penalties prescribed for the offense. In drug conspiracy cases, the United States need not prove commission of an overt act in furtherance of the conspiracy, and may prove its case by circumstantial evidence. United States v. Shabani, --- U.S. ----, 115 S.Ct. 382, 383 (1994); United States v. Moore, 11 F.3d 475, 480 (4th Cir.1993), cert. denied, 114 S.Ct. 1864 (1994); United States v. Clark, 928 F.2d 639, 641 (4th Cir.1991). In fact, it is usually shown by circumstantial evidence, and may be inferred from the totality of the circumstances shown by the evidence. United States v. Harris, 39 F.3d 1262, 1267 (4th Cir.1993). Too, the knowledge and participation elements of a conspiracy may be shown by circumstantial evidence. United States v. Dozie, 27 F.3d 95, 97 (4th Cir.1994). Once a conspiracy is established, all that is required is a slight connection between the defendant and the conspiracy to support the conviction. United States v. Al-Talib, 55 F.3d 923, 931 (4th Cir.1995). A defendant need not have knowledge of his coconspirators, or knowledge of details of the conspiracy to be convicted of conspiring. United States v. Rooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). The evidence in this case is more than sufficient for "any rational trier of fact[to] have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1976). The court ruled correctly in denying defendants' Rule 29 motion, and in finding the evidence was sufficient on each of the counts to establish the guilt of the defendants beyond a reasonable doubt.
 
 IV.
 
 9
 Next, defendants complain of the action of the court in making inquiry of counsel and of each defendant in the presence of the jury as to whether each defendant wished to testify. It is clear that under the Fifth Amendment to the United States Constitution, no person shall be compelled in any criminal case to be a witness against himself. It is also true that the courts agree it is improper for either the court or prosecution to make any comment on the failure of a defendant to testify. In Griffin v. State of California, 380 U.S. 609, 615 (1965), the Court held "that the Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." In footnote 6, 380 U.S. at 616, the Court said "We reserve decision on whether an accused can require, as in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257, that the jury be instructed that his silence must be disregarded."[1] While the more appropriate way to deal with the question of whether a defendant desires to testify is to make the inquiry out of the presence of the jury, the making of the inquiry in this case was not reversible error.
 
 V.
 
 10
 Cleveland and Ronald complain that the court incorrectly determined the quantity of drugs attributable to each of them. The court attributed 698.45 grams of cocaine powder and 70.3 grams of cocaine base to Ronald and 77.3 grams of cocaine base, 15,566 grams of cocaine powder and two pounds of marijuana which is the equivalent of 4660 kilograms of marijuana to Cleveland. Alicia Johnson testified to making a trip to New York with Ronald and Cleveland when they purchased 500 grams of cocaine and a second trip when they purchased 7 ounces--198.45 grams--of cocaine. Cleveland went or sent his coconspirators on bi-weekly trips to New York to purchase 14 ounces of cocaine which was brought back to North Carolina, packaged and sold. Over a period of about a year, Alicia Johnson purchased a half an ounce of cocaine from Cleveland twice a week and sold it. Thereafter, she delivered one-half ounce packages of cocaine, often twice daily, for Cleveland. Undercover agents made numerous purchases from Ronald, in many of which Cleveland participated. The court found, and the evidence supports, Ronald and Cleveland were responsible for the possession and sale of the above-said quantities of cocaine. See United States v. Ricco, 52 F.3d 58, 62-63 (4th Cir.1995).
 
 VI.
 
 11
 We need not dwell long on the complaint that the court improperly applied the Sentencing Guidelines which permits a 100 to 1 ratio of powder cocaine to cocaine base (crack). We have already held these guidelines as constitutional. See United States v. Fisher, 58 F.3d 96, 99 (4th Cir.1995); United States v. Johnson, 54 F.3d 1150, 1163 (4th Cir.1995); United States v. Jones, 18 F.3d 1145, 1151 (4th Cir.1994); United States v. D'Anjo, 16 F.3d 604, 612 (4th Cir.), cert. denied, 114 S.Ct. 2754 (1994).
 
 VII.
 
 12
 Defendants assert the trial judge committed prejudicial and reversible error by remarks made during the trial. From a reading of the suggested remarks, it is beyond question they were not, nor were they intended to be, in any way prejudicial to the defendants nor did they influence or affect the jury's judgment in this case. It is the duty of the judge to control the trial of the case and to prevent unnecessary delay or needless waste of time. Likewise, it is the duty of the judge to preside with dignity and to conduct the trial "in a genuine atmosphere of impartiality." United States v. Cassiagnor, 420 F.2d 868, 878 (4th Cir.), cert. denied, 397 U.S. 1044 (1970), and to use caution so as "not create an appearance of partiality by continued intervention on the side of one of the parties or undermine the effective functioning of counsel." United States v. Norris, 873 F.2d 1519, 1526 (D.C.Cir.), cert. denied, 420 U.S. 911 (1974). But, "the precepts of fair trial and justice absolutely do not require a judge to be inert. He is governed by the interest of justice and truth." Id. In any event, no objections were timely raised to the statements, nor can they be said to constitute plain error.
 
 VIII.
 
 13
 In a search of Cleveland's home pursuant to a search warrant, the searching party located a file box with cards therein with names of people and what appeared to be sums of money owed by them. Alicia Johnson testified that she had worked for Cleveland; that the box and cards were kept at Cleveland's residence and used to keep records of customers' drug debts; and that she was familiar with the business routine of keeping the cards and recorded information on the cards. She said any figure which she wrote on the cards was for money loaned or a debt due. She filled out the card for a drug deal when money was owed and when received credited it on the card all at the direction of Cleveland. Alicia identified the box with the cards and the separate card which was Exhibit 122-1, and identified entries made by her at the direction of Cleveland. Even if their admissibility was erroneous, the error was clearly harmless.
 
 IX.
 
 14
 Lastly, Sidberry complains that the court erred in sentencing him as a career offender and in refusing to depart downward because his criminal history over-represented the seriousness of his criminal history and the likelihood he would commit further crimes. Neither of these contentions have merit. Sidberry's sentencing fell clearly within the provisions of Section 4B1.1 of the Sentencing Guidelines in that Sidberry was at least 18 years of age at the time of the instant offense, the instant offense was a controlled substance offense, and defendant had at least two prior felony convictions, one a crime of violence and one a controlled substance offense. Sidberry had been previously convicted of possession with intent to distribute Flurazepam on April 22, 1981, and on May 13, 1994, of an assault with a deadly weapon inflicting serious injury. While Sidberry asserts the assault conviction of May 13, 1994 was sustained subsequent to the conduct forming the basis of the current offense, the record is clear Sidberry continued his unlawful activity with drugs and was convicted for selling crack cocaine in June and July of 1994 which were after the assault conviction. Sidberry's contention is without merit. See Deal v. United States, --- U.S. ----, 113 S.Ct. 1993, 1996 (1993); United States v. Elwell, 984 F.2d 1289, 1298 (1st Cir.1993); United States v. Belton, 890 F.2d 9, 10 (7th Cir.1989). The district judge determined that Sidberry's criminal history did not over-represent the seriousness of his criminal conduct and the likelihood he would commit further crimes. He received points for sale and delivery of Flurazepam and possession with intent to sell and deliver marijuana, assault with a deadly weapon,[2] burglary of a structure, fictitious registration card and misdemeanor assault inflicting serious injury. He had other convictions for which he did not receive criminal history points including assault on a female (four counts), simple possession of marijuana, non-support, gambling, and disorderly conduct.
 
 
 15
 Finding the convictions and sentencings are supported by adequate evidence and finding no reversible error, the convictions and sentencings are
 
 
 16
 AFFIRMED.
 
 
 
 *
 Senior Judge Kellam participated in the consideration of this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d)
 
 
 [1]
 The United States points out that no exception was taken at the time of the Court's inquiry. However, we need not reach that question here
 
 
 [2]
 This assault was with a sledge hammer as a result of which the victim suffered a broken leg, broken ribs, cuts and bruises