UNITED STATES of America, Plaintiff-Appellee,

v.

Billy Charles BURGESS, a.k.a. Brad, a.k.a. Landofahz, Defendant-Appellant.

No. 97-3552.

United States Court of Appeals,

Eleventh Circuit.

May 18, 1999.

Appeal from the United States District Court for the Middle District of Florida. (No. 97-140-CR-ORL-18), G. Kendall Sharp, Judge.

Before BARKETT, Circuit Judge, and KRAVITCH and MAGILL[*], Senior Circuit Judges.

BARKETT, Circuit Judge:

Billy Burgess appeals his conviction and sentence on charges arising from arrangements he made to rendezvous for sexual purposes in another state with a person he met over the internet and whom he knew only as "Maggie284," a thirteen-year-old girl. Burgess alleges multiple constitutional errors relating to his indictment and conviction under 18 U.S.C. §§ 2423(b) & 2422(b), including violations of his First, Fifth, and Sixth Amendment rights, and also argues that the district court acted arbitrarily and capriciously by establishing his base offense level at twenty rather than at fifteen, which is the level set by the United States Sentencing Guidelines ("U.S.S.G.") for the crime of statutory rape. *See* U.S.S.G. § 2A3.2. We reverse.

I.     Background

At approximately 11 p.m. on Sunday, March 30, 1997, Billy Burgess logged onto an America Online sexually-oriented internet "chatroom" for men interested in "barely legal females." Using the screen name "LandofAhz," Burgess exchanged sexually explicit messages until close to midnight with another chatroom participant identified by the screen name of Maggie284. Maggie284 described herself as a thirteen-year-old girl, but in reality was a twenty-six-year-old man named Randall Sluder, who had created Maggie284 with the intention of identifying and reporting to the authorities individuals who use the internet to engage in

---

[*]Honorable Frank J. Magill, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

"cybersex" with underage teenagers.[1]  Throughout this conversation, Maggie284 referred repeatedly to her "Mom," misspelled words, and frequently mentioned her age, weight (ninety-two pounds), and inexperience. At some point during the exchange, LandofAhz told Maggie284 that in two weeks' time he was scheduled to be in Orlando, where Maggie284 claimed to live, and suggested that they meet in person.  Burgess asked Maggie284 what clothing size she wore and, on learning it was size ten, told her he would arrive in a limousine bearing lingerie in her size, champagne, and other gifts.  Maggie284 asked him to "email me," and Burgess promised to do so, although after he logged off he made no effort to initiate further interaction.

Sluder subsequently printed out the conversation between Maggie284 and LandofAhz and delivered it to the police.  The officers then took over the "identity" of Maggie284 and, just before noon on Monday, April 14, e-mailed Burgess, asking if he was still planning to come to Orlando.  Burgess answered in the affirmative.  Over the next few days, Burgess and Maggie284 exchanged e-mails, and ultimately arranged a meeting at 8 p.m. on April 16, 1997 behind the Enterprise Hotel in Orlando.  As part of these arrangements, Maggie284 e-mailed Burgess a phone number where she could be reached, a number that in reality connected to an undercover telephone at the Kissimmee Police Department.  At the specified time, Burgess called the number, and a police officer who often worked undercover as a child answered the phone.  Speaking in a manner consistent with that of a thirteen-year-old girl, the officer confirmed the meeting time and place, and Burgess reiterated his promise to be driving a limousine.  During this conversation, Burgess again asked what size clothing he should buy, and was told size twelve.  Meanwhile, the police subpoenaed the records of America Online, which disclosed that the screen name "LandofAhz" was assigned to B.C. Burgess of Kansas City, Missouri.  On the evening of April 16, 1997, Burgess arrived in Orlando and made his way to the Enterprise Hotel in a rented Lincoln Town Car, bearing no champagne, lingerie, or gifts of any kind.  At approximately 8:10 p.m., moments after he pulled into the parking lot, he was arrested.

---

[1]Sluder was on probation at the time for the felony of fleeing and attempting to elude a police officer.

Burgess was initially charged under Florida law with soliciting a minor. These charges were eventually dropped, and Burgess was charged in federal court under a superceding indictment with one count of traveling in interstate commerce with intent to engage in a sexual act with a juvenile in violation of 18 U.S.C. § 2423(b), and two counts of using a facility affecting interstate commerce knowingly to entice a juvenile to engage in sexual acts in violation of 18 U.S.C. § 2422(b).[2] At trial, Burgess's attorney requested that the court instruct the jury that no adverse inference could be drawn from Burgess's decision not to testify. At the close of the charge, the court asked if either side had any objections, and defense counsel objected that the requested cautionary instruction had been omitted from the charge. The court responded that it had been included "in about the third instruction," to which Burgess's attorney replied, "I didn't hear that. But if you gave it, I apologize." The district court did not order any portion of the charge read back to confirm its belief that the requested instruction had been read, and it was later shown that the instruction had in fact been omitted.

The jury spent five hours deliberating after the two-day trial. During the course of its deliberations, the jury sent a question to the judge, asking for further instruction on the law of entrapment. The judge

----

[2]The statutes under which Burgess was charged read:

> (b) Travel with intent to engage in sexual act with a juvenile.—A person who travels in interstate commerce, or conspires to do so ... for the purpose of engaging in any sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States shall be fined under this title, imprisoned not more than ten years, or both.

18 U.S.C. § 2423

> (b) Whoever, using any facility or means of interstate or foreign commerce, including the mail, or within the special maritime and territorial jurisdiction of the United States, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years to engage in prostitution or any sexual act for which any person may be criminally prosecuted, or attempts to do so, shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 2422.

responded that "[t]he law on entrapment is correctly before you." Burgess was convicted on all counts. At sentencing, defense counsel analogized Burgess's offense to statutory rape and argued that the base offense level should be set at fifteen. *See* U.S.S.G. § 2A3.2 (establishing a base offense level of fifteen for the crime of statutory rape). The prosecution, labeling Burgess's crime as one of violence, argued that the appropriate base offense level was twenty-seven. *See* U.S.S.G. § 2A3.1 (establishing a base offense level of twenty-seven for the crime of sexual abuse involving intent to use force, threat of death, serious bodily injury or kidnapping). The district court set the base offense level at twenty, and sentenced Burgess to thirty-three months' imprisonment, two years of supervised release, and a $300.00 special assessment, plus the cost of incarceration. Burgess now appeals his conviction and sentence.

II.      Discussion

Burgess raises a host of arguments on appeal. However, because we find that the district court committed reversible error when it failed to deliver the requested cautionary instruction regarding Burgess's decision not to testify, we address this claim only.[3]

In *Carter v. Kentucky,* 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981), the Supreme Court held that "the Fifth Amendment requires that a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so."[4] *Id.* at 300, 101 S.Ct. 1112; *see also United States v. Russo,* 796 F.2d 1443, 1454 (11th Cir.1986) (applying the rule established in *Carter* ); *United States v. Richardson,* 764 F.2d 1514, 1529 (11th Cir.1985) ("The jury must be told to draw no adverse inference from

---

[3]We do, however, note that at oral argument the government was unable to provide any support for its analogy of Burgess's crime to sexual abuse involving intent to use force, threat of death, serious bodily injury or kidnapping. *See* U.S.S.G. § 2A3.1. We are thus hard pressed to see any reason why the appropriate analogy for sentencing purposes for the crime here committed would not have been statutory rape. *See* U.S.S.G. § 2A3.2.

[4]The Supreme Court has also held that this same obligation is imposed on the courts by federal statute. *See Bruno v. United States,* 308 U.S. 287, 292-93, 60 S.Ct. 198, 84 L.Ed. 257 (1939) (holding that defendants have the right under 18 U.S.C. § 3481 to request and receive a cautionary instruction that failure to testify in one's own defense creates no negative presumption); *United States v. Bain,* 596 F.2d 120, 122 (5th Cir.1979) (same).

a refusal to testify;  defendants may have that instruction as of right.") (citing *Carter,* 450 U.S. at 301, 101 S.Ct. 1112).

The government concedes this point.  It further concedes, as it must, that despite Burgess's timely request, the district court included no such cautionary instruction in the jury charge, and that Burgess's counsel timely raised an objection to this omission.  The government nonetheless argues that Burgess is entitled to no relief on this claim because, even though the instruction was properly requested and its omission properly raised, Burgess's attorney did not press the point any further after the court said the requested instruction had been given.

The law is clear that, to be given effect, "an objection must be framed with precision sufficient to inform the trial judge as to the matter about which the objection is raised and the grounds therefor." *United States v. Haynes,* 573 F.2d 236, 241 (5th Cir.1978)[5];  *see also United States v. Greenfield,* 554 F.2d 179, 186 (5th Cir.1977) ("The trial court must be apprised of the basis for objection with sufficient particularity to allow an informed decision to be made on the legal issue involved.").  The idea behind this requirement is that the district court should be given "the chance to correct errors before the case goes to the jury." *United States v. Sirang,* 70 F.3d 588, 594 (11th Cir.1995).

Burgess's attorney properly requested that the jury be instructed to draw no adverse inference from Burgess's decision not to testify.  After delivery of the jury charge, Burgess's attorney objected that despite this earlier request, the court still had failed to instruct the jury on this matter.  The court responded that it believed the instruction had been included.  The government's assertion that the defense failed to meet its burden of raising a sufficient objection thus hinges on the claim that, even though the defendant had timely requested the instruction and had timely objected when it was not given, defense counsel should have insisted that the court read back the charge to confirm that it in fact had been delivered.  We find this argument unpersuasive.  From the exchange that ensued after the defense first raised the issue, it is clear that the court

---

[5]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

had understood the substance of the objection and had "the chance to correct the error before the case [went] to the jury." *Sirang,* 70 F.3d at 594. The defense therefore met its burden and preserved the objection for appeal.

Although the district court may have intended to give the instruction, the court failed to ensure that it had been given when the omission was brought to the court's attention, and the importance of the Fifth Amendment protection afforded by a "no-adverse-inference" instruction is not diminished in such circumstances. "Jurors are not experts in legal principles; to function effectively, and justly, they must be accurately instructed in the law." *Carter,* 450 U.S. at 302, 101 S.Ct. 1112. And, because " '[t]oo many, even those who should be better advised, view [the Fifth Amendment] privilege as a shelter for wrongdoers [and] too readily assume that those who invoke it are ... guilty of crime,' ... [s]uch instructions are perhaps nowhere more important than in the context of the Fifth Amendment privilege against compulsory self-incrimination." *Id.* (quoting *Ullmann v. United States,* 350 U.S. 422, 426, 76 S.Ct. 497, 100 L.Ed. 511 (1956)). Once Burgess timely requested the instruction and raised an objection sufficient to put the court on notice of its omission from the jury charge, it fell to the court to correct the error. Not even the good faith belief that no error had occurred relieves the court of this obligation. The court elected not to pursue the matter further, and the defense is not required to pay the price of that decision.

In the alternative, the government argues that, because the district court thoroughly instructed the jurors concerning the presumption of innocence and the burden of proof, the harm of failing to deliver the requested "no-adverse-inference" instruction is somehow overcome. The Supreme Court, however, has flatly rejected this argument. *See Carter,* 450 U.S. at 304, 101 S.Ct. 1112 ("The other trial instructions and arguments of counsel [regarding the presumption of innocence and the burden of proof] were no substitute for the explicit [no-adverse-inference] instruction that the petitioner's lawyer requested.").

We turn now to the question of the appropriate remedy. In *United States v. Bain,* 596 F.2d 120 (5th Cir.1979), the former Fifth Circuit held that a court's failure to honor its obligation to deliver a requested

6

no-adverse-inference instruction "rises to the level of reversible error." *Id.* at 122 (following *Bruno v. United States,* 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939), in holding that courts are required under federal statute[6] to deliver such an instruction when so requested by the defendant). However, Supreme Court precedent decided post-*Bain* requires that we decline to follow *Bain* insofar as it requires automatic reversal of the judgment in this case. *See Cottrell v. Caldwell,* 85 F.3d 1480, 1485 (11th Cir.1996) ("Where prior panel precedent conflicts with a subsequent Supreme Court decision, we follow the Supreme Court decision."). In *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Court established the circumstances under which courts are to apply the constitutional harmless error standard. In that case, the Court identified certain "structural defects"—among them "the total deprivation of the right to counsel" and "a judge who was not impartial"—which affect "the entire conduct of the trial from beginning to end," *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246, and distinguished such defects from "trial error[s]" which occur "during the presentation of the case to the jury." *Id.* at 307. The Court explained that, although errors rising to the level of structural defects "defy analysis by 'harmless error' standards," *id.* at 309, 111 S.Ct. 1246,[7] trial errors may "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." *Id.* at 307-08, 111 S.Ct. 1246. *Fulminante* thus requires that, in the event of trial error, we apply the harmless error standard to determine whether the commission of that error demands that the conviction be reversed.

Although the Court has not had occasion to classify the precise error at issue here, we believe that under the terms set out in *Fulminante,* the failure of a court upon proper request to deliver a no-adverse-inference instruction would be classified as a "classic 'trial error,' " *id.* at 309, 111 S.Ct. 1246, able

---

[6]*See* 18 U.S.C. § 3481 ("In trial of all persons charged with the commission of offenses against the United States ... the person charged shall, at his own request, be a competent witness. His failure to make such a request shall not create any presumption against him.").

[7]*See also Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246 (" 'Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.' ") (quoting *Rose v. Clark,* 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)).

to "be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307-08, 111 S.Ct. 1246. Not only have "most constitutional errors ... been held amenable to harmless-error analysis," *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (citing *Fulminante* ), but the Court held in *Kentucky v. Whorton,* 441 U.S. 786, 789-90, 99 S.Ct. 2088, 60 L.Ed.2d 640 (1979), that the trial court's failure upon proper request to instruct the jury on the presumption of innocence was appropriately subject to harmless error analysis. *See also Fulminante,* 499 U.S. at 306-07, 111 S.Ct. 1246 (including *Whorton* among the many cases cited to demonstrate the "wide range of errors" to which "the Court has applied harmless-error analysis"). Serious error though it is, a court's failure to deliver a requested no-adverse-inference instruction does not rise to the level of an error like the "total deprivation of the right to counsel," in the face of which " 'no criminal punishment may be regarded as fundamentally fair.' " *Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246 (quoting *Rose,* 478 U.S. at 578, 106 S.Ct. 3101). This factor, considered alongside the Court's discussion in *Fulminante* and its holding in *Whorton,* leads us to conclude that a trial court's failure to deliver a requested "no-adverse-inference" instruction must be analyzed under the standard of constitutional harmless error. We therefore believe that superceding Supreme Court precedent requires that we decline to follow *Bain* to the extent it holds that a verdict reached following the commission of such a constitutional error is automatically subject to reversal.[8]

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. 824. In other words, "the court must be convinced beyond a reasonable doubt that the error did not contribute to the defendant's conviction." *Cape v. Francis,* 741 F.2d 1287, 1294 (11th Cir.1984) (citing *Chapman* ). As Justice Scalia explained in *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the inquiry "is not whether, in a trial

---

[8]Because no statutory argument was raised on appeal, we do not decide whether harmless error review is also appropriate for like violations of § 3481.

that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Id.* at 279, 113 S.Ct. 2078 (emphasis in the original). This Court has understood this inquiry to require that we "review the facts of the case and the evidence adduced at trial to determine ... whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Cape,* 741 F.2d at 1294 (internal quotation marks and citations omitted).

After thorough examination of the record before us, we find ourselves unable to conclude that the evidence adduced in this case was "not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Id.* As a result, we are not convinced beyond a reasonable doubt that the district court's error in failing to deliver the requested cautionary instruction did not contribute to the conviction.

Two elements of the government's case at trial were supported by evidence arguably insufficient to overcome *Chapman*'s harmless error standard and would have led to an acquittal had they been resolved differently by the jury: the rebuttal of Burgess's entrapment defense,[9] and the intent requirement for violations of §§ 2423(b) & 2422(b), which here required a finding that Burgess believed that Maggie284 really was a thirteen-year-old girl and not simply an adult playing that role. Consideration of the evidence adduced at trial as to the first of these two elements—the government's rebuttal of Burgess's entrapment defense—is sufficient to convince us that the trial error in question was not harmless beyond a reasonable

[9]It is well settled that, "[w]here the Government has induced an individual to break the law and the defense of entrapment is at issue, ... the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Jacobson v. United States,* 503 U.S. 540, 548-49, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992); *see also United States v. Chirinos,* 112 F.3d 1089, 1102 (11th Cir.1997) ("A defendant is not entitled to an entrapment instruction unless he first shows 'some evidence, more than a scintilla, that government agents induced him to commit the offense.' Once the defendant meets this initial burden, 'the question of entrapment becomes a factual one for the jury to decide. In that situation the defendant is entitled to have his defensive theory of the case put before the jury with the appropriate instructions from the trial judge.' ") (quoting *United States v. Timberlake,* 559 F.2d 1375, 1379 (5th Cir.1977)).

doubt. *Cape,* 741 F.2d at 1294. For, although the jury found against Burgess on the entrapment issue, there was evidence before the jury sufficient to rebut the suggestion that the evidence against him on this issue was "overwhelming," and thus we cannot say beyond a reasonable doubt that the jury verdict was not affected by the trial court's failure to give a no-adverse-inference instruction. *See id.* As the jury instruction reflected, "[a] person is entrapped when he is induced or persuaded by law enforcement officers or their agents to commit a crime that he had no previous intent to commit." And as was shown by the evidence at trial, despite Burgess's promise at the end of the initial internet encounter to email Maggie284 soon, after he logged off he initiated no further contact. In fact, it was not until the Kissimmee police posed as Maggie284 and themselves renewed contact on April 14, asking whether Burgess "was still coming to Orlando soon," that Burgess and "Maggie" began making arrangements to meet. That Burgess did not initiate contact after the initial exchange represents evidence to support the conclusion that he had no intention at that time of actually trying to meet Maggie284 in person, and that he would not have committed the crime had the police not induced him to do so.[10]

That the evidence that Burgess was not entrapped was less than "overwhelming" was clearly demonstrated by the behavior of the jury. The single communication made to the court by the jury during the course of its deliberations was a request for further instruction on the law of entrapment. Specifically, the foreman wrote: "Need clarification on entrapment, the jury instruction seems contradictory. There is some reasonable doubt that the Defendant would have pursued this further if the police did not send the first E-mail on 4/11/97, is this nothing more than the Govt. offering an opportunity."[11]

----

[10]The jury also knew that Randall Sluder was on probation at the time he embarked on his mission to root out adults using the internet to solicit sex with minors, a fact which might have raised a question as to Sluder's claim that he was acting independently at the time, and thus as to whether Burgess's initial contact with Maggie284 was orchestrated by an "agent" of the police.

[11]To this, the court responded: "The law on entrapment is correctly before you. If you perceive a contradiction you must collectively resolve it."

10

These factors, and the jury's question in particular, indicate that the members of the jury did not find the evidence that Burgess had not been entrapped to be "overwhelming," *see Cape,* 741 F.2d at 1294, and that in fact they had doubts about its sufficiency. These doubts might well have been resolved one way or the other had Burgess himself testified. It is thus not unreasonable to imagine that the jurors, not having been instructed to draw no adverse inference from Burgess's decision not to testify, resolved their doubts against him because of his failure to take the stand in his own defense. It is therefore impossible to say that "the guilty verdict actually rendered in *this* trial was surely unattributable to the error," *Sullivan,* 508 U.S. at 279, 113 S.Ct. 2078, and thus that the district court's failure upon proper request to deliver a cautionary instruction to the jury regarding the defendant's right not to testify was harmless beyond a reasonable doubt.

There is also a question whether the evidence adduced at trial as to the second questionable element of the government's case—whether Burgess really believed Maggie284 to be underage—was of sufficient strength to overcome the *Chapman* standard for the harmlessness of constitutional error.[12] Although the jury's verdict indicated a finding against Burgess on the question of intent, the jury also had before it evidence tending to suggest that Burgess did not really believe that Maggie284 was a thirteen-year-old girl, including the fact that at least two of the contacts between Burgess and Maggie284 were made at times—between 11 p.m. and midnight on a school night, and 11:46 a.m. on a school day—that a thirteen-year-old would be unlikely to be surfing the internet; and the fact that Burgess asked on two separate occasions what size clothing Maggie wore, and was given two different answers, of which both—size ten and size twelve—reflected sizes more commonly worn by adult women than by ninety-two-pound girls. We need not, however, determine whether the weight of this countervailing evidence on the question of intent was sufficient to overcome *Chapman* 's harmless error standard, because our review of the facts of the case and

---

[12]Upon retrial, the district court and the parties would do well to address the effect of the Supreme Court's decision in *United States v. X-Citement Video, Inc.,* 513 U.S. 64, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), on the statutes at issue in this case. By resolving whether these statutes require Burgess to have known or believed that Maggie284 was under the age of eighteen, the district court will be in a better position to resolve the parties' differences over the phrasing of the jury instructions, the evidence required to support a conviction, and the constitutional implications of Burgess's prosecution.

11

the evidence adduced at trial as to the entrapment issue leads us to conclude that the error committed in this case was not harmless beyond a reasonable doubt.

Accordingly, we hereby REVERSE Burgess's conviction, VACATE his sentence, and remand this case to the district court for further proceedings consistent herewith.