[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15779
_____

D.C. Docket No. 2:12-cv-03974-RDP-TMP


DURRELL BESTER,

Petitioner-Appellant,

versus

WARDEN,
ATTORNEY GENERAL OF THE STATE OF ALABAMA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(September 2, 2016)

Before ED CARNES, Chief Judge, JORDAN, Circuit Judge, and LAMBERTH,[*]
District Judge.

ED CARNES, Chief Judge:

_____
[*] Honorable Royce C. Lamberth, United States District Judge for the District of
Columbia, sitting by designation.

Durrell Bester appeals the district court's denial of his 28 U.S.C. § 2254 petition, which challenged his Alabama convictions for trafficking in cocaine, failure to affix a tax stamp, and possession of drug paraphernalia. Bester contends that his trial counsel rendered ineffective assistance by failing to request that the jury be given a no-adverse-inference jury instruction, which would have told the jurors that they could not infer from his failure to testify that he was guilty.

## I.

On May 24, 2009, Sergeant Hattie French and Deputy Jude Washington of the Jefferson County Sheriff's Office were conducting surveillance on Bester's home in preparation for the execution of a search warrant when they saw two men park a blue pickup truck in front of the house. After one of the men got Bester from the house, he and Bester began throwing bags and luggage into the back of the truck. Once the truck was loaded, Bester, carrying a white bag, got in the front and the three men drove away. Sergeant French and Deputy Washington notified some other officers and then followed the truck to an apartment complex where Deputy Mark Eaton met up with them.

At the apartment complex Bester and one of the other men got out of the truck. Each was carrying a white bag. Bester's bag was small and looked like a plastic grocery bag, while the other man's was larger and looked like a garbage bag. They entered an apartment, which belonged to Bester's mother. The men

2

stayed in the apartment for a few minutes before leaving without the bags and driving away in the same truck.

Sergeant French and Deputy Washington stayed at the apartment complex while Deputy Eaton and some other officers followed the truck. The officers at the apartment complex obtained from Bester's mother written consent to search her apartment. She took them into a bedroom and told them that Bester had put his bag in a corner behind a stereo. She also gave them a handwritten statement that read: "I saw my son come home with bags + left + two white gu[y]s were with him + he left come in [sic] with the white bag behind the [boom]box."[1]

Inside the small white grocery bag that they found behind the boombox, the officers found digital scales and two smaller bags, one containing 43.5 grams of powder cocaine and one containing 26.1 grams of crack cocaine. The officers also found in the bedroom marijuana and the large white garbage bag, which itself contained scales, baggies, and a glass Pyrex cup with residue in it.

In the meantime, some officers had pulled over the truck Bester and his two companions were in. Deputy Eaton conducted a dog sniff with his K-9 partner, Pepsi, who indicated the presence of drugs in a black suitcase in the bed of the truck. When Deputy Eaton searched the suitcase, he found "pieces of torn off

---

[1] At trial Bester's mother denied telling the officers that Bester had put the small white grocery bag in the bedroom, saying that Bester's companion was the one who had put it there. The State impeached her denial with her written statement.

3

Brillo pad, syringes, an ash tray, a pill splitter and a push rod that was burnt on the end," which is "typical of use in a crack pipe." Bester later admitted to Deputy Eaton that the suitcase was his. After conducting the car stop, Deputy Eaton went back to Bester's house and executed the search warrant. There, he found small bags containing what appeared to be cocaine residue and a set of digital scales.

Throughout Bester's trial for trafficking in cocaine, failure to affix a tax stamp, and possession of drug paraphernalia, the court permitted members of the jury to ask the witnesses questions. While Deputy Eaton was on the stand, several jurors asked him about the suitcase and the small white grocery bag. The trial court permitted Deputy Eaton to explain to the jury that he did not have the suitcase fingerprinted because Bester admitted that it was his, but the court refused to let Deputy Eaton answer questions from the jury about the small white grocery bag. Jurors were allowed to ask Sergeant French questions about who had carried which bag into Bester's mother's apartment. Her answers incriminated Bester.

Bester did not testify in his own defense at trial. His attorney did not ask the trial court to give the jury a no-adverse-inference instruction. While the trial court in opening and closing instructions did instruct the jury that it had to presume Bester's innocence, that the State had the burden of proving his guilt beyond a reasonable doubt, and that Bester did not have to present any witnesses in his own defense, it did not give a no-adverse inference instruction. The jury found Bester

4

guilty of all three charges, and the trial court sentenced him to life imprisonment without the possibility of parole for the drug-trafficking offense, 15 years imprisonment for the failure-to-affix-a-tax-stamp offense, and 12 months in jail for the drug-paraphernalia offense.

## II.

In 2010 Bester filed a pro se Alabama Rule of Criminal Procedure 32 petition for post-conviction relief alleging, among other claims, that his trial counsel was ineffective for failing to request a no-adverse-inference instruction. Bester obtained habeas counsel, who represented him at an evidentiary hearing in state court.  After the evidentiary hearing the state habeas trial court denied Bester's Rule 32 petition, stating:

> [I]t is alleged that trial counsel failed to request or object to the Court not giving a jury instruction on the Petitioner's failure to testify. There was no request made to the Court to give the instruction regarding a Defendant who does not testify during his trial and therefore the Court did not have an opportunity to rule on that issue. Therefore, the Court finds that [this] issue is without merit . . . .

Bester, still represented by habeas counsel, appealed the state habeas trial court's denial of his Rule 32 petition.  But habeas counsel abandoned Bester's no-adverse-inference-instruction claim, prompting Bester to file a pro se brief raising that claim.  The Alabama Court of Criminal Appeals permitted Bester's habeas counsel to withdraw and allowed Bester to proceed pro se, but it refused to consider his pro se brief.  In its order affirming the state habeas trial court's denial

of his Rule 32 petition, the Alabama Court of Criminal Appeals considered only the claims that Bester's attorney had raised in the brief he filed before being dismissed as counsel.  Bester applied for rehearing, arguing that the appellate court had not addressed his claim that trial counsel was ineffective for failing to request the no-adverse-inference instruction, but the court denied his application.  The Alabama Supreme Court denied Bester's petition for certiorari, in which he had again argued that the Alabama Court of Criminal Appeals failed to address his no-adverse-inference-instruction claim.

### III.

In 2012 Bester filed pro se in federal district court a § 2254 petition for writ of habeas corpus.  He claimed, among other things, that his trial counsel had rendered ineffective assistance by failing to request a no-adverse-inference instruction and that failure had prejudiced him because "it is more likely than not that the jury assigned culpability to him by assuming . . . from his failure to testify that petitioner had something to hide, and/or otherwise that he was guilty."  A magistrate judge, while acknowledging that ineffective assistance of counsel claim, apparently conflated it with a separate claim that trial counsel had not permitted Bester to testify.  Without holding an evidentiary hearing, the magistrate judge recommended denying both claims because:

> The [state habeas] trial court heard the petitioner's claim that he wanted to testify but was not allowed to, and his attorney's testimony

6

that he advised the petitioner not to testify, even though he had a right to testify, and that the petitioner chose to accept the attorney's advice. Under questioning, the petitioner admitted that his attorney advised him not to testify and that he thought his attorney was acting in his best interest. The record developed at the trial court's Rule 32 hearing does not demonstrate that the court made any unreasonable determination of any facts in light of the evidence presented. Neither has petitioner demonstrated that the trial court failed to follow any clearly established federal law with respect to his right to testify.

Despite Bester's objection that the magistrate judge's report and recommendation did not address his claim that trial counsel was ineffective for failing to request a no-adverse-inference instruction, the district court adopted the report, agreed with the recommendation, and denied Bester's § 2254 petition. This Court granted Bester a certificate of appealability on the following issue:

Whether [Bester's] trial counsel rendered ineffective assistance of counsel by failing to request a no-adverse-inference jury instruction regarding petitioner's right not to testify. See Carter v. Kentucky, 450 U.S. 288, 101 S. Ct. 1112 (1981).

## IV.

We review de novo a district court's denial of a § 2254 petition. Ferguson v. Sec'y, Fla. Dep't of Corr., 716 F.3d 1315, 1330 (11th Cir. 2013). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court cannot grant habeas relief on a claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of

7

the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In this case, it appears that none of the state courts adjudicated on the merits Bester's claim that trial counsel was ineffective for failing to request the no-adverse-inference instruction.

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits — but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 568 U.S. __, 133 S. Ct. 1088, 1096 (2013). For example, the Supreme Court suggested in Johnson that "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." Id. at 1097; Childers v. Floyd, 736 F.3d 1331, 1334 (11th Cir. 2013) (en banc) ("To determine whether the presumption has been rebutted, we look to the state court's decision and the record in the case to determine whether the evidence leads very clearly to the conclusion that the federal claim was inadvertently overlooked in state court.") (footnote, quotation marks, and alteration omitted). The presumption has been rebutted in this case.

The Alabama Court of Criminal Appeals, while permitting Bester to proceed pro se, rejected his pro se brief — not the arguments in his brief, but the brief itself — and considered only the claims that his (dismissed) habeas counsel had

raised, which did not include a claim of ineffective assistance for failing to request a no-adverse-inference instruction. While the state appellate court may not have "inadvertently overlooked" Bester's claim, it did not adjudicate the claim on the merits either. See Johnson, 133 S. Ct. at 1097. Neither did the state trial court.

In the state collateral proceeding, the trial court acknowledged Bester's claim that trial counsel was ineffective for failing to request a no-adverse-inference instruction. But the reason for its denial of the claim, paradoxically, was that the trial court had not had the opportunity to decide whether to give the instruction because counsel had not requested it. Which was the point of the ineffective assistance of counsel claim, a point that the state court's circular reasoning missed. In the terms of the Johnson decision, the state trial court "inadvertently overlooked" the actual claim, failing to rule on the merits of it. Johnson, 133 S. Ct. at 1097. We therefore must decide the claim de novo. See id. at 1096.

## V.

The Supreme Court has held that "a criminal trial judge must give a 'no-adverse-inference' jury instruction when requested by a defendant to do so." Carter, 450 U.S. at 300, 101 S. Ct. at 1119. The right to such an instruction is necessary to protect "[t]he freedom of a defendant in a criminal trial to remain silent unless he chooses to speak in the unfettered exercise of his own will." Id. at 305, 101 S. Ct. at 1121 (quotation marks omitted). That is because "the failure to

9

limit the jurors' speculation on the meaning of that silence, when the defendant makes a timely request that a prophylactic instruction be given, exacts an impermissible toll on the full and free exercise of the privilege." Id. (emphasis added). But the Supreme Court has also said in dicta that "[i]t may be wise for a trial judge not to give [a no-adverse-inference jury] instruction over a defendant's objection." Lakeside v. Oregon, 435 U.S. 333, 340, 98 S. Ct. 1091, 1095 (1978). Neither the Supreme Court nor this Court has ever held that a trial court must give a no-adverse-inference instruction if one is not requested. Nor has either court held that it is ineffective assistance of counsel not to request such an instruction.

Bester raises that ineffective assistance claim, contending trial counsel was ineffective for failing to request a no-adverse-inference instruction. To establish his claim of ineffective assistance, he must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). Counsel performs deficiently if "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066. A counsel's deficient performance prejudices the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. "Because both parts of the test must be satisfied in order to show a violation of the

Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).  We will take advantage of that option and forego deciding whether trial counsel performed deficiently by not requesting the no-adverse-inference instruction.  We can skip over that issue because Bester has not established a reasonable probability that the result of his proceeding would have been different if the instruction had been requested and given.

Bester argues that the evidence that he possessed cocaine and drug paraphernalia was "not overwhelming" and that the jury's questions about the small white plastic bag show that it had doubts about whether he possessed the items inside it.  He relies heavily on this Court's decision in United States v. Burgess, 175 F.3d 1261 (11th Cir. 1999).  In that case, the defendant requested a no-adverse-inference instruction but the district court failed to give it.  Id. at 1263–64.  While deliberating, the jury asked the court for further instruction about the law on Burgess' defense of entrapment and stated that "[t]here is some reasonable doubt that the Defendant would have [committed the crime] if the police did not send [him an email], is this nothing more than the Govt. offering an opportunity." Id. at 1268.  In the end the jury convicted Burgess.  Id. at 1264.  On direct appeal we reversed his convictions because the evidence against Burgess was not

overwhelming, especially in light of the jury question explicitly stating that it had reasonable doubt about the sufficiency of the evidence on the entrapment issue. Id. at 1267–69.

Bester's reliance on the Burgess decision is misplaced. Even if the facts in this case were identical to those in Burgess (which they are not), the Burgess decision would not establish that Bester has shown the necessary prejudice because that case and this one are governed by different burdens of persuasion and different prejudice standards. In Burgess we held that the district court's failure to give a no-adverse-inference instruction when the defendant had requested one is constitutional error, id. at 1265–66, a "classic trial error," id. at 1266 (quotation marks omitted), subject to "constitutional harmless error" review. Id. at 1267. And "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967). The government, not the defendant, bears the burden of establishing that a constitutional error is harmless. What the Burgess decision holds is that where the evidence against the defendant was not overwhelming and, after all of the evidence was in, the jury stated it had a reasonable doubt about guilt, the government has not carried its burden of proving beyond a reasonable doubt that the failure to give the instruction was not harmless. Burgess, 175 F.3d at 1267–69.

12

Bester, on the other hand, has asserted a claim of ineffective assistance in a § 2254 proceeding, so the burden on the prejudice or harm issue is on the other side of the courtroom.  The state does not have the burden of showing that any error was harmless beyond a reasonable doubt, or harmless by any standard at all. Instead, Bester has the burden of establishing prejudice under the Strickland standard.  See Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1256 (11th Cir. 2012) ("To succeed on his ineffective assistance of counsel claim, [the petitioner] has the burden of showing [deficient performance and prejudice] under Strickland.").  He must show that there is a "reasonable probability that, but for counsel's [claimed] unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Bester has not carried his burden of showing prejudice.  The evidence against him was overwhelming and the jurors' mid-trial questions did not show that they had doubts about this guilt.  Sergeant French testified that she saw Bester and a companion carrying the white grocery bag and the black suitcase from his house to the truck, and both Sergeant French and Deputy Eaton testified that they saw Bester carrying the small white grocery bag from the truck to his mother's apartment.  Bester's mother gave the officers a written statement that Bester had brought a white bag into her house and placed it behind the boombox, where the officers found the small white grocery bag.  In addition to Bester's mother's

13

written statement, three officers testified that she had told them that her son had brought a small white grocery bag into her apartment. That bag contained digital scales, a bag of powder cocaine, and a bag of crack cocaine.

As for the black suitcase, Deputy Eaton found it in the bed of the truck Bester was riding in when the police pulled him and his companions over. Deputy Eaton's K-9 partner Pepsi indicated the presence of drugs in the black suitcase. The suitcase contained "an ash tr[a]y, a pill splitter, three syringes, small pieces of torn off Brillo pad, [and] a burn push rod, typical of use in a crack pipe," which Deputy Eaton testified were items "commonly used for the injection of drugs." And Deputy Eaton testified that Bester had admitted that the suitcase was his. There was no evidence to refute or cast doubt on any of that testimony.

Bester relies on the questions that several jurors asked during the trial about the small white grocery bag that he carried into his mother's apartment. He would have us believe those questions show that the jury had "doubts about the evidence." We are not persuaded. Questions that the jury as a whole sends to the judge during deliberations may indicate some doubt about the strength of the evidence, as they did in the Burgess case. But in the unusual trial where individual jurors are permitted to submit questions to clarify testimony while a witness is still on the stand, juror questions will seldom indicate that the jury has doubts about guilt. First, the questions come from individual jurors and not the jury as a whole.

14

Second, when a question is allowed by the judge and answered by the witness, the answer may well resolve any concern or doubt that the juror had.  Third, even if a question indicated some doubt in an individual juror's mind at that point in the trial, there is no way to know whether that doubt survived the presentation of other evidence, the judge's closing instructions to the jury, and the arguments of counsel.  In this case, the most that the jurors' questions show is that at least some of them were paying attention to the trial evidence and conscientiously attempting to clarify any ambiguities in the evidence while they had the opportunity to do so.

In light of the overwhelming evidence of his guilt, Bester has not carried his burden of showing that the jury inferred his guilt because of the lack of a no-adverse-inference instruction.  He has not shown a "reasonable probability that . . . the result of the proceeding would have been different" if counsel had requested and the court had given a no-adverse-inference instruction.  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

## VI.

At oral argument Bester asserted that he was entitled to an evidentiary hearing on this claim.  A hearing might arguably be relevant to the performance deficiency issue in an ineffective assistance of counsel claim.  But see Harrington v. Richter, 562 U.S. 86, 109, 131 S. Ct. 770, 790 (2011) ("The Court of Appeals erred in dismissing strategic considerations . . . as an inaccurate account of

15

counsel's actual thinking . . . . Strickland . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."); Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) ("The reasonableness of a counsel's performance is an objective inquiry. And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take.") (footnotes and citations omitted). We have, however, skipped over the deficiency issue and affirmed the denial of the claim because of Bester's failure to show prejudice. It is difficult, if not impossible, to imagine any facts outside the record that are relevant to the question of whether there is a reasonable probability of a different result if a particular jury instruction had been given. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985) (explaining that, in an ineffectiveness case involving the alleged failure of counsel to discover or present potentially exculpatory evidence, the prejudice inquiry "will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial"). Bester has not proffered any facts that would be relevant to that issue in this case. That is enough, by itself, to rule out an evidentiary hearing.

And there is another reason to do so. Absent certain exceptions not applicable here, a federal court may not hold an evidentiary hearing in a § 2254

16

proceeding if the applicant failed to develop the factual basis for the claim in state court proceedings.  28 U.S.C. § 2254(e)(2); Williams v. Taylor, 529 U.S. 420, 430, 120 S. Ct. 1479, 1487 (2000) ("If the prisoner has failed to develop the facts, an evidentiary hearing cannot be granted unless the prisoner's case meets the other conditions of § 2254(e)(2).").  Bester has offered no justification for his failure during the evidentiary hearing held in the state collateral proceeding to develop whatever facts he thinks may be relevant to the prejudice issue.  He is not entitled to another shot at it in federal court.  See 28 U.S.C. § 2254(e)(2).

**AFFIRMED.**