[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14394
Non-Argument Calendar
_____

D.C. Docket No. 0:18-cv-60383-BB

ERIC LUCAS,

Petitioner-Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,
SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 8, 2021)

Before MARTIN, BRANCH, and LAGOA, Circuit Judges.

PER CURIAM:

Eric Lucas, a Florida prisoner proceeding *pro se*, appeals the district court's order denying his 28 U.S.C. § 2254 petition.  This Court granted a certificate of appealability ("COA") on the following claim: "[w]hether Lucas's trial counsel provided ineffective assistance by failing to call Alisa Catoggio as an alibi witness, and whether the district court abused its discretion in denying this claim without an evidentiary hearing."  For the reasons explained below, we affirm the district court's denial of this claim.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 2007, Lewisha Freeman was getting ready for work in her apartment when she heard screams in the apartment hallway.  Freeman opened her apartment door and saw a woman, later identified as Lauren Glushko, Lucas's girlfriend, crying and yelling.  Freeman also saw Lucas grab Glushko by the throat but then let her go.  Freeman went back inside her apartment to call the police, and Glushko entered Freeman's apartment, closing the door behind her.  While Freeman was calling the police, Lucas was screaming at Glushko from the hallway.  Janet Landry, Freeman's boss, came down the hallway and told Lucas to leave, which Lucas appeared to do.  Approximately five minutes later, however, Lucas returned and began yelling at Freeman through her apartment door.  Lucas proceeded to bust through Freeman's door, entered her apartment, punched Freeman several times in the head, and kneed Freeman in her eye, causing her injuries.  Landry heard the

2

commotion, entered the apartment, and tried to keep Lucas from continuing to hit Freeman. Lucas eventually ran out of the apartment. Freeman later identified Lucas as her assailant both in a photo lineup and in court.

Lucas was charged with burglary of a dwelling with a battery against Freeman, in violation of Florida Statute § 810.02(1) and (2)(a), and aggravated battery against Freeman, in violation of Florida Statute § 784.045. On August 28, 2008, Lucas's first trial counsel withdrew from the case, and Lucas secured different counsel on September 5, 2008. Immediately prior to trial, the State moved to admit the out-of-court statements given by Glushko to Officer Thomas Stenger of the Fort Lauderdale Police Department when he arrived at the scene. The State explained that Lucas had made phone calls to Glushko from jail encouraging her to mislead the State and claim a lack of memory of the incident and threatened her with violence. The state trial court granted the State's motion.

On August 3, 2009, the case proceeded to trial, and Freeman, Officer Stenger, Detective Justin Moody, and Kathleen Casey, an employee of the Broward County Sheriff's Office, all testified. Additionally, over objection, the State published three recorded phone calls Lucas made from jail to a number associated with Glushko. After the State rested, Lucas moved for judgment of acquittal, which the trial court denied. Lucas's counsel rested the case without presenting any witnesses, to which Lucas agreed following questioning by the trial court. The jury found Lucas guilty

of both charges. Because Lucas was a prison releasee reoffender, the trial court sentenced Lucas to concurrent sentences of life imprisonment for the burglary charge and fifteen years' imprisonment for the aggravated battery charge. Lucas appealed to Florida's Fourth District Court of Appeal, which affirmed his convictions and sentence. *Lucas v. State*, 67 So. 3d 332 (Fla. Dist. Ct. App. 2011).

In January 2013, Lucas filed *pro se* a state postconviction motion raising several ineffective assistance of counsel claims under *Strickland v. Washington*, 466 U.S. 668 (1984).[1] None of those claims, however, were based on a failure to present an alibi defense or call an alibi witness. Following litigation over whether one of Lucas's claims was sufficiently pled,[2] Lucas, now with the aid of counsel, raised a fifth claim of ineffective assistance of counsel—failing to object to the introduction of the jail calls on the basis that the State failed to establish Lucas's identity on the calls. The state postconviction court denied Lucas's motion, the Fourth District Court of Appeal affirmed and denied rehearing, and the Florida Supreme Court denied discretionary review.

---

[1] These claims included: (1) failing to consult or call an ophthalmologist to rebut the State's case as to the permanent damage element of aggravated battery; (2) failing to object to the introduction of the jail calls on the basis that the State failed to establish Glushko's identity on the calls; (3) failing to impeach Freeman, the victim, with the police report; and (4) failing to move to dismiss the aggravated battery charge as duplicate of the burglary with battery charge.

[2] *See Lucas v. State*, 147 So. 3d 611 (Fla. Dist. Ct. App. 2014); *State v. Lucas*, 183 So. 3d 1027 (Fla. 2016).

On February 20, 2018, Lucas filed a petition under 28 U.S.C. § 2254. Then, on March 8, 2018, Lucas filed an amended petition raising nine grounds for relief. Of relevance to this appeal, ground eight of the amended petition asserted that Lucas was provided ineffective assistance of counsel when his "counsel failed to present a viable alibi defense that was available to [him]." Specifically, Lucas claimed that his trial counsel was ineffective for failing to call Alisa Catoggio, who testified in a deposition in which Lucas's attorney did not participate and who was listed on Lucas's attorney list of potential witnesses. Lucas asserted that Catoggio would have credibly testified that she was "continuously" with Lucas when the offense occurred and that there was a reasonable probability the outcome of his trial would have been different had Catoggio testified. In her deposition, Catoggio testified that she was friends with and had a sexual relationship with Lucas and that, on the night of the incident, she had picked Lucas up from a friend's house because he was not feeling well. Catoggio also testified that she and Lucas went to bed around 1:00 or 2:00 a.m. and that they both woke up around 8:00 a.m. when Lucas received a call about the incident. Catoggio stated that Lucas asked her to drive to his apartment, which was about fifty minutes away, to "check out" what had happened there and that Lucas later told her he "had gotten into a fight" with "his ex-girlfriend Lauren." And Catoggio stated that Lucas's attorney had contacted her. Lucas, however, admitted that he did not raise this issue in his state postconviction proceedings,

5

claiming he did not raise it because he was proceeding *pro se* when he filed his state postconviction motion.

In response, the State argued that ground eight was both unexhausted and procedurally barred because Lucas had not raised the claim in any state direct or collateral proceeding, and any petition or motion Lucas could now file in state court would be untimely or successive. The State also argued that, although Lucas initially proceeded *pro se* when he filed his state postconviction motion, he was later appointed counsel. Finally, the State argued that the claim was not substantial. Specifically, the State contended that Catoggio's testimony, if presented at trial, would not have demonstrated a credible alibi defense, as her testimony would not rule out Lucas going to his apartment complex after Catoggio fell asleep, attacking Glushko and Freeman, and then returning to Catoggio's home. The State also argued that Catoggio's credibility could be attacked because she admittedly refused an opportunity to reveal this alibi to the police on the day of the incident or at any point until seven months after Lucas's arrest and because of her friendship and sexual relationship with Lucas. As such, the State argued that a reasonable attorney could find that pursuing an alibi defense would not be successful and, thus, Lucas's claim was not substantial and should be procedurally barred.

On July 23, 2019, the magistrate judge issued a report recommending that Lucas's petition be denied. As to ground eight, the magistrate judge noted that Lucas

conceded the claim was unexhausted because it was never presented in state court and determined that a future attempt to exhaust the claim would be futile under the state's procedural default doctrine. However, the magistrate judge determined that it would evaluate whether ground eight was a "substantial" claim as Lucas had demonstrated "sufficient cause"—that he was *pro se* when he filed his initial postconviction motion—under *Martinez v. Ryan*, 566 U.S. 1 (2012). The magistrate judge then concluded that ground eight was not a substantial claim. After analyzing Catoggio's deposition testimony, the magistrate judge found that it was unlikely she would have been a credible witness at trial because: (1) she did not speak to the police until more than seven months after Lucas's arrest; (2) her sexual relationship with Lucas; and (3) "material contradictions" within her statements, such as the reasoning as to why she, and not Lucas, went to Lucas's apartment after the incident. Given Catoggio's credibility issues and the facts of the case, the magistrate judge determined that "a reasonable attorney could have found that pursuing an alibi defense and presenting her as a witness based on her deposition testimony would have been unsuccessful" and that there was nothing to suggest that the trial's outcome would have differed if she had testified. As such, because Lucas had not demonstrated any prejudice under the second prong of *Strickland*, the magistrate judge recommended a finding that ground eight was without merit and procedurally defaulted from federal review. The magistrate judge also found that the "pertinent

7

facts of this case [were] fully developed in the record" such that an evidentiary hearing was not warranted. Finally, the magistrate judge recommended denying Lucas a COA.

Lucas filed objections to the magistrate judge's report, asserting that the magistrate judge erred in denying his request for an evidentiary hearing, and requested an evidentiary hearing. As to ground eight, Lucas disputed the magistrate judge's determination that it was unlikely Catoggio would be a credible witness and argued that an evidentiary hearing was required to establish why his counsel failed to investigate and present her as a material alibi witness.

The district court issued an order adopting the magistrate judge's report and recommendation. The district court overruled Lucas's objections, explaining that the objections were either "further expansions of argument originally raised in the Petition" or "merely disagreements with the [r]eport's findings." Lucas appealed and filed a motion for a COA in this Court. This Court granted a COA on the issue of "[w]hether Lucas's trial counsel provided ineffective assistance by failing to call Alisa Catoggio as an alibi witness, and whether the district court abused its discretion in denying this claim without an evidentiary hearing."

## II.    STANDARD OF REVIEW

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact *de novo*, and findings

of fact for clear error." *Tanzi v. Sec'y, Fla. Dep't of Corr.*, 772 F.3d 644, 651 (11th Cir. 2014) (quoting *Grossman v. McDonough*, 466 F.3d 1325, 1335 (11th Cir. 2006)). We review "[a] district court's decision to grant or deny an evidentiary hearing for abuse of discretion." *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir. 2005).

## III.    ANALYSIS

On appeal, Lucas raises two issues. First, he argues that he was denied effective assistance of counsel when: (1) his two attorneys failed to investigate, interview, or call an alibi witness; (2) when an alibi defense was his only defense; and (3) his counsel presented no other defense at trial. Second, Lucas contends that he has shown cause for his failure to develop the facts in his state court proceedings and that the actual prejudice from such failure to entitle him to a federal evidentiary hearing. We address his arguments in turn.

### A. Whether Lucas was denied ineffective assistance of counsel by failing to call Catoggio as an alibi witness

Lucas argues that the district court erred in denying his ineffective assistance of counsel claim as to presenting an alibi defense based on Catoggio's testimony. First, as Lucas conceded below, he did not raise this claim in his state postconviction proceedings and, thus, did not exhaust his state court remedies as to this claim. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995). "A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred

9

from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default," *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999), or a demonstration "that failure to consider the claims will result in a fundamental miscarriage of justice," *Sullivan v. Sec'y, Fla. Dep't of Corr.*, 837 F.3d 1195, 1201 (11th Cir. 2016) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  Procedural default of a claim may occur "if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default."  *Bailey*, 172 F.3d at 1303.  Florida law generally requires ineffective assistance claims to be raised on collateral review and to be raised within two years after the judgment and sentence becomes final.  *Sullivan*, 837 F.3d at 1199; Fla. R. Crim. P. 3.850(b); *see also Rigg v. Warden, Blackwater River Corr. Facility*, 685 F. App'x 812, 816 (11th Cir. 2017).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Supreme Court recognized an exception to the general procedural default rule.  The Court held that where a claim of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding under state law, "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id.* at 17.  Thus, to demonstrate "cause" under *Martinez*, a petitioner must establish: (1) a substantial claim of ineffective assistance

of trial counsel; (2) the cause for the failure to raise the claim was lack of postconviction counsel in the initial collateral review proceeding; (3) the state collateral proceeding was the initial opportunity to review the claim; and (4) the state's law requires ineffective assistance of trial counsel claims to be raised in the initial collateral proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013). A substantial claim is one that has "some merit." *Martinez*, 556 U.S. at 14.

To establish a claim of ineffective assistance of counsel under *Strickland*, a petitioner must demonstrate that (1) his counsel's performance was deficient, i.e., that the "representation fell below an objective standard of reasonableness," and (2) he was prejudiced by the deficient performance, i.e., there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 688, 694). There is a strong presumption that counsel acted effectively, and the reasonableness of an attorney's strategic decision is judged from an objective perspective, not from "counsel's subjective state of mind." *Id.* at 110. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S at 690–91. Thus, "counsel has a duty to make reasonable

11

investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. The decision to call witnesses, if any, is "the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995).

We agree with the district court's determination that Lucas did not establish a substantial claim of ineffective assistance of counsel based on his trial counsels' decision not to raise an alibi defense through Catoggio's testimony. While Lucas claims that his counsel failed to investigate and prepare the alibi defense, his first trial counsel was aware that Catoggio could serve as a potential witness, given her inclusion on Lucas's potential witness list and Catoggio's own testimony that the attorney had contacted her. Additionally, Catoggio's deposition was filed on March 4, 2009—five months prior to trial—and was available to Lucas's second trial counsel, who ultimately decided not to depose Catoggio further or pursue an alibi defense.

Moreover, as explained by the district court, the State could have attacked Catoggio's credibility based on her friendship and sexual relationship with Lucas as well as internal inconsistencies with her deposition testimony. And Catoggio's deposition testimony did not completely foreclose the possibility that Lucas was at the scene of the incident. Catoggio testified that she fell asleep around 1:00 or 2:00 a.m. and that Lucas woke her up around 8:00 a.m. The incident, however, occurred

12

at around 5:30 a.m., and Catoggio's home was only fifty minutes away from Lucas's apartment complex. Given these facts, the strategic decisions of Lucas's trial counsels not to investigate Catoggio further or call her as a witness to present an alibi defense was well within the counsels' reasonable professional judgment, and thus, Lucas has failed to demonstrate that the counsels' performances were deficient.

Finally, even if the performances of Lucas's two trial counsels were deficient, Lucas has not demonstrated prejudice. Freeman's testimony and Glushko's out-of-court statements introduced at trial both identified Lucas as Freeman's assailant. Additionally, as evidenced by the calls Lucas made from jail, Lucas threatened Glushko to prevent her from speaking about the incident. Based on the record in this case, there is no reasonable probability that the result of Lucas's trial would have been different if Lucas's counsel had raised the alibi defense. Lucas has therefore failed to demonstrate that his claim is substantial under *Martinez*. Accordingly, this claim is procedurally defaulted.

## B. Whether the district court abused its discretion in denying the claim without an evidentiary hearing

Lucas further argues that he should be entitled to an evidentiary hearing on his claim to develop his claim. In habeas proceedings, "[t]he burden is on the petitioner . . . to establish the need for an evidentiary hearing." *Chavez v. Sec'y Fla. Dep't of Corrs.*, 647 F.3d 1057, 1060 (11th Cir. 2011) (alterations in original) (quoting *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984)). In deciding

13

whether to hold an evidentiary hearing on a habeas claim, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *accord Chavez*, 647 F.3d at 1060.

We find that the district court did not abuse its discretion in denying an evidentiary hearing. Lucas argues that additional facts could be developed at an evidentiary hearing, including why his first counsel did not appear at Catoggio's deposition and why his second counsel did not depose Catoggio or call her as a witness. As explained above, however, the reasonableness of an attorney's strategic decision is judged from an objective perspective, not from "counsel's subjective state of mind." *Harrington*, 562 U.S. at 110. Here, the facts Lucas seeks to develop would serve to evaluate his counsels' *subjective* state of mind, not the objective reasonableness of their performances. Based on the state court record, it was well within the counsels' reasonable professional judgment not to pursue an alibi defense based on Catoggio's testimony. And Lucas has not shown any facts demonstrating prejudice from his counsels' failure to present an alibi defense. *See Bester v. Warden*, 836 F.3d 1331, 1340 (11th Cir. 2016) ("Bester has not proffered any facts

14

that would be relevant to [the prejudice] issue in this case. That is enough, by itself, to rule out an evidentiary hearing."). Thus, because this claim can be adequately assessed without further factual development, the district court was not required to hold an evidentiary hearing. *See Schriro*, 550 U.S. at 474; *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).

Moreover, the district court was limited by 28 U.S.C. § 2254(e)(2), which "restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011); *accord Bester*, 836 F.3d at 1340. Section 2254(e)(2) prohibits a district court from holding an evidentiary hearing if a petitioner fails to develop the factual basis for a claim in state court proceedings, unless the claim relies on: (1) "a new rule of constitutional law[] made retroactive" or "a factual predicate that could not have been previously discovered through the exercise of due diligence;" and (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A)–(B). A finding of due diligence "depends upon whether the prisoner made a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court."

*Crawford v. Head*, 311 F.3d 1288, 1329 (11th Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 420, 435 (2000)).

Here, Lucas did not raise this claim in his state collateral proceedings. Moreover, his claim is not based on a new rule of constitutional law, and, to the extent Lucas asserts that he could not have discovered the claim's factual predicate through the exercise of due diligence, this is refuted by the record. The state court trial docket reflects that Catoggio's deposition testimony was filed months prior to Lucas's trial, and Lucas could have carefully reviewed that docket and requested a copy of the deposition from the trial court. Furthermore, Lucas would certainly have known of the facts surrounding Catoggio's potential role as an alibi witness, as Catoggio claimed to be with Lucas at her home before and after the incident occurred. The district court therefore did not err in denying Lucas's request for an evidentiary hearing.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's order denying Lucas's petition.

**AFFIRMED.**